Board of Com'rs v. Burns.

---

## BOARD OF COM'RS OF CONVERSE COUNTY v. BURNS.

### (April 19, 1892.)

COUNTY TREASURERS — SALARIES — CHANGES DUR-ING TERM OF OFFICE.

1. Under Const. art. 14, § 3, making classes for counties according to their assessed valua-tion, and fixing the maximum salaries "per year" that can be paid treasurers of counties within the several classes, and Laws 1890-91, c. 55, pre-scribing the "annual" salary of treasurers of counties of the several classes, the salary must continue the same throughout an official year, and cannot be more or less for the last than the first part, though an assessment made within the year shows that it has an "assessed valua-tion" of a higher or lower class.

2. Const. art. 3, § 32, providing that, "except as otherwise provided in this constitution, no law shall extend the term of any public officer, or in-crease or diminish his salary or emolument, after his election or appointment," prevents a change in the salary of a county treasurer during the term of his office by reason of a change in the "assessed valuation" of the county which would place it in a higher or lower class, and the oper-ation of a law enacted before his election provid-ing different salaries for counties of different classes according to their assessed valuation.

CONAWAY, J., dissenting.

Error to district court, Converse coun-ty; RICHARD H. SCOTT, Judge.

Action by N. E. Burns against the coun-ty commissioners of the county of Con-verse for salary as county treasurer.

Judgment for plaintiff. Defendant brings error. Reversed.

C. C. Wright, for plaintiff in error. A. C. Campbell and R. W. Breckons, for defend-ant in error.

GROESBECK, C. J. This cause was sub-mitted to the trial court on an agreed statement of facts. From this it appears that the defendant in error was elected to the office of treasurer of Converse coun-ty at the first state election, held Septem-ber 11, 1890, for the term of two years com-mencing on the first Monday of January, 1891, and that he qualified as such officer, assumed the duties of his office on said day of the beginning of his term, and con-tinued to act as such officer until the 1st day of October, 1891. The first state legis-lature, by an act approved January 10, 1891, classified the several counties of the state on the basis of the assessed valua-tion, for the purpose of determining the salaries to be paid to county officers; and Converse county, being a county of the third class, as defined in the act,—that is, having then an assessed valuation of more than $900,000 and not exceeding $2,-000,000,—its county treasurer received, and was entitled to receive under the terms of the act, an annual salary of $1,000. By the annual assessment for the year 1891, which, it is stipulated, was finally fixed and itemized according to law on the 12th day of August, 1891, the county had an assessed valuation of $2,-125,347.61, which would classify it as a county of the second class under the act, it then having an assessed valuation of more than $2,000,000 and not exceeding $5,000,000, the salary of the treasurer of such second-class county being fixed by the statute at $1,800 per annum. Defend-ant in error presented to the board of the county commissioners of his county on October 6, 1891, his three separate claims or accounts for services as county treasurer, —one for salary for the month of July, 1891, for $83.33; one for $126.55 for the month of August, being $32.88 for the first 12 days of that month, and $93.67 for the remainder of the month; and one for the month of September for $150,—these three accounts aggregating $309.88. Prior to the 13th day of August, 1891, these ac-counts computed the salary of the county treasurer at the rate of $1,000 per annum, and from that date at the rate of $1,800 per annum. The county board allowed the sum of $250, reckoning the services of

the treasurer at the rate of $1,000 per annum for the entire time—three months —covered by these accounts, and rejected and disallowed the excess of $109.88. The defendant in error brought suit, and obtained judgment in the district court for Converse county for the sum disallowed by the board, and the county board brings error here.

Before proceeding with the discussion of the points involved in the case, it is proper to call attention to the apparent mistake in the agreed statement of facts, to the effect that the assessment of the county was completed for the year 1891 on the 12th day of August of that year. The papers submitted as part of the evidence of the case, as the record discloses, show that the state board of equalization notified the clerk of Converse county that there was no change in the assessment of property of said county as made by the county board of equalization, which is composed of the county commissioners, in the sum of $1,537,965.50, and appended its assessment of the railway and telegraph lines in said county,—a duty by statute to be performed by the state board exclusively,—in the sum of $587,-382.11. This notice of the state board was dated August 18, 1891, and was filed in the office of the county clerk, as is shown by his certificate, on the 27th day of that month. It therefore appears that the assessment of Converse county was not completed and could not have been ascertained on the 12th day of August, 1891, the date fixed therefor in the agreed statement of facts, as the assessment of the railway and telegraph lines must be entered on the assessment roll before the assessment could be fully completed. We have nothing before us to show the accurate date of the completion of the assessment except the agreed statement of facts, and what we judicially know from the statute, that, as the taxes are levied by the county board on the first Monday of September of each year, it may be presumed that the assessment roll was fully completed, and the assessment of the county ascertainable, on that day in 1891. The constitution of this state (article 14, § 1, "Salaries") provides that "all state, city, county, town, and school officers (except justices of the peace and constables in precincts having less than fifteen hundred population, and excepting court commissioners, boards of arbitration, and notaries public) shall be paid fixed and definite salaries. The legislature shall from time to time fix the amount of such salaries as are not already fixed by this constitution, which shall in all cases be in proportion to the value of the services rendered and the duty performed." Section 2 of the same article provides that the officers excepted in the foregoing section 1 shall have fees, which they shall accept as full compensation, and that all other state, county, city, town, and school officers (those having salaries instead of fees) shall account for all fees received by them, and pay the same into the proper treasury when collected. Section 3 of the same article provides "the salaries of county officers shall be fixed by law within the following limits," and then follows the maximum limits to be paid to the several county officers enumerated. The following provisions govern the salaries of county treasurers. In counties having an assessed valuation not exceeding $2,-000,000 the county treasurer shall not be paid more than $1,000 per year; in counties having an assessed valuation of more than $2,000,000, and not exceeding $5,000,-000, the county treasurer shall not be paid more than $1,800 per year; in counties having more than $5,000,000 assessed valuation the county treasurer shall not be paid more than $2,000 per year. The first state legislature obeying this constitutional direction passed the act referred to, (chapter 55, Sess. Laws Wyo. 1890-91,) classifying the counties of the state, in the following language: "Section 1. For the purposes of this act the counties of this state are classified as follows: Counties having more than five million dollars assessed valuation shall be counties of the first class; counties having assessed valuation of more than two million dollars, and not exceeding five million dollars, shall be counties of the second class; counties having assessed valuation of more than nine hundred thousand dollars, and not exceeding two million dollars, shall be counties of the third class; counties having an assessed valuation of less than nine hundred thousand dollars shall be counties of the fourth class." At the time of the passage of this act defendant in error had already commenced his term of office. His county was then classified as a county of the third class, and he was entitled to an annual salary of $1,000. He insists that by the assessment of 1891, completed, as alleged in the statement of facts, August 12th, his county having an

assessed valuation of more than $2,000,-000, and not exceeding $5,000,000, it passed from the third to the second class, and, as its treasurer, he at once became entitled to receive a salary of $1,800 annually, the compensation fixed in the act for such officers of counties of the second class.

It was conceded in argument that the legislature had a right to fix the salary of defendant in error according to the assessed valuation of the counties, not only by virtue of these provisions of article 14 of the constitution, but by the closing clause of section 32 of article 3. This section reads as follows: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument, after his election or appointment; but this shall not be construed to forbid the legislature from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, if such salaries or emoluments are not fixed by its provisions." Under this proviso the compensation could be fixed even during the term, as the defendant in error was one of the officers first elected under the constitution, and his salary was not definitely fixed by its provisions. The first state election as to county officers was validated and legalized by law. Chapter 9, Sess. Laws 1890-91. The law providing for the compensation of county treasurers in force at the time of the first state election gave a percentage on the moneys received and disbursed by the county treasurers, and this act was repealed by the statute now under consideration. It was admitted in argument, and it is too plain to be disputed, that the legislature had a right to pass this salary act after the election and qualification of defendant in error. Another point arises here, which was not presented to us, but which we will notice. The term "public officer" has been held to apply to such officers only as receive salaries from the state treasury, (Supervisors v. Hackett, 21 Wis. 613;) that it applies only to those whose offices are created by the constitution itself, and as to all others the legislature may change their term of office or compensation, and such change of term or compensation will apply as well to the officers then in office as to those thereafter to be elected, (Douglas Co. v. Timme, [Neb.] 49 N. W. Rep. 266.) It was held otherwise by the supreme court of Pennsylvania, in which state the constitutional inhibition is very much

like ours. A county solicitor was held to be a public officer, (Lancaster Co. v. Fulton, 128 Pa. St. 48, 18 Atl. Rep. 384;) so with county treasurers, (County of Crawford v. Nash, 99 Pa. St. 253;) and it was said by the same court in Apple v. Crawford Co., 105 Pa. St. 303: "That the sheriff [of Crawford county] is a public officer coming within the operation of the constitutional provisions cannot be doubted." Every one appointed to perform a public duty, and who receives compensation, is a public officer. Foltz v. Kerlin, 105 Ind. 221, 4 N. E. Rep. 439, and 5 N. E. Rep. 672; U S. v. Hartwell, 6 Wall. 385; Ricketts v. Mayor, 67 How. Pr. 320; Kehn v. State, 93 N. Y. 291; State v. Stanley, 66 N. C. 59; State v. Goss, 69 Me. 22; People v. Hurlbut, 24 Mich. 59.

1. Looking to the legislation on the subject of salaries of county officers antecedent to the admission of the state into the Union, but after the convention had framed and promulgated the constitution, and after it had been ratified at the polls, we find that the last territorial legislature regulated the salaries of nearly all of the county officers, as stated in the two acts relating thereto, according to the assessed valuation of the county on the basis of the next preceding annual assessment. Chapters 24, 46, Sess. Laws Wyo. T. 1890. Under these territorial statutes the salaries of the county officials were fixed for the entire official year, beginning then, as now, on the first Monday of January, on the basis of the next preceding annual assessment of the county, which would necessarily be concluded and determined before the first Monday of September of the preceding year,—the time fixed for levying taxes. If these territorial acts had provided for salaries to be paid to all county officers, it might well have been considered a legislative interpretation of the meaning of the term "assessed valuation," and when this was to be ascertained, as the members of the last territorial legislature had the constitution before them, the admission of the state was imminent, and it might be presumed that no law would be passed by that body not in harmony with the written will of the people; but the compensation of county treasurers was fixed in one of these acts as a percentage and not as a fixed salary. The act of the first state legislature fixing the salaries of county officers does not attempt to construe the words "having an assessed valuation," whether according to the next pre-

Board of Com'rs v. Burns.

ceding annual assessment or not. It merely adopts the phraseology of the constitution, without attempting to place any construction upon these words. The salary mentioned in the constitution is so much "per year," while the act uses the equivalent words, "annual salary." A salary per annum, per year, or an annual salary means a salary reckoned and computed by the year, and, if the service continues during the year, a salary that runs through the whole year. It does not mean a salary reckoned at a certain annual rate for a portion of the year and by another and different rate for the residue of the year. As the salary of the defendant in error was an annual salary fixed under the classification of his county by the act, he was entitled to, received, and accepted, for the greater portion of the year, an annual salary of $1,000. He cannot receive an annual salary for this amount for seven months and a fraction, and a greater annual salary for four months and a fraction. Taking his claimed computation for the year, he would be entitled to the annual salary of $1,359.88 for his first official year, and this is neither an annual salary of $1,000 for a treasurer of a third-class county or $1,800 annual salary for such officer of a second-class county. In Kansas, the salary of a county superintendent of schools was based upon the amount of population for his county. A census was taken by the school trustees, under the authority of a statute of that state, March 1, 1880, and showed the population of a certain county to be less than 15,000, the county never having, prior to that time, a population of that number. According to the federal census, taken on the 1st of June of that year, the county contained a population of 15,125. The salary of the county superintendent was fixed by law at $600 in counties having more than 10,000 and less than 15,000 inhabitants, while in counties having more than 15,000 and less than 20,000 population that officer was entitled to a salary of $800. In the opinion the court says: "It is not pretended that the population during the entire year of 1880 was over 15,000. It is expressly conceded that up to March 1, 1880, at least, the population was less than 15,000, and the only claim is that from June 1st thenceforward to the end of the year the population was over 15,000. Further, it is conceded that the only evidence of population furnished by state authority is that furnished by the census of

March 1st, showing a population of less than 15,000. Now, the salary prescribed by the statute above referred to is a salary per annum. This means that the salary for the year is graduated by the population of the year. It does not mean that the salary varies from month to month, or from day to day, with any corresponding increase or decrease of population, but it is a salary which, once fixed, remains fixed for the year. It is conceded that up to March 1, 1880, and by the only state census taken during that year, and that in March, 1880, the population was less than 15,000. This, we think, controls the salary for the year, and that, no matter though it should be shown by absolute and incontrovertible testimony that thereafter during the year the population ran to a number in excess of 15,000, the salary of the county superintendent would not be changed thereby. The salary is not to be determined by the highest population during the year, nor necessarily the lowest. It is enough when the statute prescribes the salary, and the only census made under state authority determines the population; and that census, unimpeached, determines the salary for the year, and no evidence of a subsequent increase or decrease will affect the question of salary thus determined." Turner v. Commissioners, 27 Kan. 639. So here the statute prescribes an annual salary, and the constitution a salary per year, graduated by the assessment of taxable property for the year,—that is, without regarding certain constitutional inhibitions which will be hereafter considered; and when this assessed valuation is once ascertained for this purpose, the salary is fixed for the entire official year, and when so fixed remains fixed for that period. It was so fixed upon the passage of the act, the salary of the defendant in error being that of a county treasurer of a county of the third class, and his salary so fixed remained fixed for the entire first official year of his term, beginning with the first Monday of January, 1891, and closing with the first Monday of January, 1892; and this fixing of salary was according to the only ascertainable assessment of the county in force at the beginning of the term and first official year,—that of the preceding year, 1890,—and this assessment continued in force until August or September, 1891, when it was finally determined what was the assessed valuation of Converse county for that year. This assess-

Board of Com'rs v. Burns.

ment of 1891 cannot be considered as having any effect on the salary of the county treasurer as the same was fixed as of the beginning of his term,—the first Monday of January, 1891,—by the act passed three days later; and when so fixed for the first official year of that officer at the sum of $1,000, the annual salary remained fixed for the entire year, notwithstanding the change in the assessment placed the county in another class of counties. Section 17 of the salary act under consideration reads as follows: "The salaries of county and precinct officers, as in this act provided, shall be paid in equal monthly installments by the county in which they serve, at the first regular monthly meeting of the board of county commissioners: * * * provided, that, in counties of the third and fourth class, the salaries of county officers shall be quarterly." Chapter 55, Sess. Laws 1890-91. So far as we can gather the legislative intent from these expressions of the legislative will, as to counties of the first and second classes, the provision is for the annual salaries to be paid monthly in equal monthly installments during the year, and not in varying sums from month to month; and in counties of the third and fourth classes the salaries are to be paid quarterly. Apparently, from the plain provisions of this section, the legislature never intended that there should be any increase or diminution dependent upon the fluctuations of the assessments of taxable property in these salaries during the year, and perhaps during the term of the officer. It therefore appears from the use of the words "per year" in section 3 of the salary article of the constitution, relating to the salaries of county officers, from the statute itself, which provides for annual salaries for such officers, to be paid in equal installments monthly, from the ordinary and legal definitions of the terms "per year" and "annual," that the salaries of county officials, when once fixed for the official year, remain fixed for that period, and cannot be increased or diminished by reason of any change in the assessment of the county during the year thereafter. For these reasons alone the judgment below should be reversed.

2. The argument of the counsel in this case was not addressed to the foregoing phase of the case, but entirely to the construction and operation of various constitutional provisions, and these we will now consider. Can the salary of a county officer be increased or diminished during his term, and after his election or appointment? Eliminating the proviso to section 32 of article 3, which it is unnecessary to consider further, the section reads: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument, after his election or appointment." This prohibition, with varying phraseology, but with the same effect, runs through the constitution. The salaries of state officers are not permanently fixed by the constitution, but are temporarily fixed, "until otherwise provided by law," with the proviso that they shall not be increased or diminished during the period for which the officers were elected. Article 4, § 14. The salaries of the judges of the supreme and district courts must be prescribed by law, but the compensation cannot be increased or diminished during the term for which the judges were elected. Article 5, § 17. The compensation of the members of the first legislature is fixed in the constitution, and after that their compensation shall be as provided by law, but no legislature can fix its own compensation, and no member of either house shall, during the term for which he was elected, receive any increase of salary or mileage under any law passed during the term. Article 3, §§ 6, 9. So careful was the first state legislature—the same body that enacted the salary act now in force—that when it provided for the compensation to be paid to the officers and members of succeeding legislative bodies it cautiously inserted a proviso that the compensation to be paid to the presiding officers of the two houses should not apply to such officers of the first state legislature. Section 2, c. 55, Sess. Laws 1890-91. The only state officers created by the constitution, where the usual provisions prohibiting an increase or decrease of compensation during the term of official service were not inserted, are the state examiner and the state engineer, and these officers are undoubtedly governed in that respect by the provisions of section 32, art. 3. It is contended that the language of this section is not of similar import, or of the same meaning, as other and special provisions of the constitution prohibiting a change in the compensation of the enumerated officers during the term of service. It is much stronger. It provides that there shall be no such change "after the election or appointment of the officer,"

Board of Com'rs v. Burns.

while the other provisions are against such change during the period or term of service. In the interval between the election or appointment of the public officer and his qualification and induction into office there can be no change in the compensation, as well as during the official term. It is urged that the expression "no law" shall increase or diminish the compensation cannot be applied here, as the law does not do so; but it is the fact of the annual assessment changing the county from one class to another that increases or decreases the compensation. This is strange reasoning. The annual assessment may change the compensation if by its effect the county passes from one class to another, either lower or higher, in the scale of classes, and this is done by virtue of the statute, and yet it is not affected by the law. Suppose that the law had provided that the salary of a county officer should be increased or diminished according to the assessed valuation of the county, to be determined each year, or by the county from its assessment passing from one class to another, would not this be a change in the salary of the official after his election or appointment by the express terms of the statute, that would be a violation of the constitutional inhibition of such a change? Suppose that the operation and effect of the law by necessary implication and inference does the same thing, would not the construction of the statute to secure the same result be just as palpable a violation of the constitution? If the salary of the county officer is changed by the operation or effect, the practical working, of the statute, it is as much increased or diminished as if the law made such a provision in express terms. The only way that salaries or emoluments of officials—state, city, county, and other public officers—can be fixed is "by law." The act fixes the salaries of county officers at the maximum limits, and could go no further. It has put in motion the provisions of the constitution, and the salary can only be paid to the county officer under the terms of the statute; and yet we are told that extraneous facts and circumstances—the assessment of the county, and not the law itself—fix the salary. The constitution does not control the legislature as to the amount of salaries to be paid to state officers, judges, or members of the legislature. It is the mischievous control of the compensation that is curbed and restricted. The purpose of the consti-

tutional provision inhibiting a change in the compensation of a public officer during his term of office was to protect the individual officer against legislative oppression, and to guard the legislature from the gainful schemes of officials. State v. Kelsey, 44 N. J. Law, 31. Party rancor, personal spleen, enmity, or grudge, might work to harass and cripple the officer by reducing his compensation during his term of service; while, on the other hand, partisan feeling, blood or business relations, might sway the members of the legislature, and cause the bestowal of an unmerited increase, without this wise restriction. Without it, there would be no limit to the control of the legislature, except, possibly, where a salary had been so reduced as practically to abolish the office. It is contended that this salutary inhibition of the constitution does not apply to county officers, as it is "otherwise provided" in the constitution that the salaries of county officers can be increased or diminished after their election and appointment, and during their term of service. There certainly is no express provision to that effect, and, if there be any provision implying it, we have failed to find it.

In support of this argument it is earnestly contended that the closing clause of section 1, art. 14, is in point, as the legislature is from time to time required to fix the salaries of such officers whose salaries have not already been fixed by the constitution, which shall "in all cases be in proportion to the value of the services rendered and the duty performed." As already stated herein, there are no salaries permanently fixed in the constitution, except the positive maximum limits fixed for salaries of county officers. This is certainly a definite fixing up to those maximum limits by this provision, and the value of the services rendered and the duty performed is sufficiently and finally considered by this limitation made in the constitution, and by the legislature in placing them at the highest point possible. No matter how valuable the services may be, and how onerous the duties of the county officer have been or may become, it is impossible to place a higher estimate upon them than is allowed by the constitution. The direction given to the legislature as to the amount of the compensation to be given by law is wholly addressed to its discretion, and, unless the salaries of the official are fixed by statute at a sum so grossly inadequate as to

practically abolish the office, or at so excessive a sum as to annul the statute, it is doubtful if the courts could interfere. They certainly cannot when the legislature has fixed the salaries at the utmost limit permitted by the constitution, for above that limit the legislature cannot go, even if its members believed that the services rendered and the duties performed by county officials were really more valuable than the sum allowed by the constitution. But the constitution evidently has regard for the ability of the people to pay as well as the other consideration of the value of the services rendered and the duty performed, for it has put these salaries on the taxable wealth of the counties, and not upon the basis of population. In the absence of the printed debates of the constitutional convention for reference, the address of the designated committee of the convention is a valuable aid, if any is needed, in determining the intent of the framers of our fundamental law. In that address, appended to the printed copies of the constitution promulgated and circulated by the convention before the election when the constitution was submitted to the people, we find this language: "Under its [the constitution's] provisions pure elections are practically guarantied, and economy of administration assured. Restrictions upon legislation and loose appropriations of public moneys are clear and positive. The salaries of officers have been fixed according to the value of the services rendered, and [in] proportion to the means of the people to pay. * * * The extravagance in the management of county affairs that has prevailed in the past has been circumscribed, and rendered impossible." But why is this closing clause of section 1 of article 14 inspected with so much care? The whole instrument must be examined with a view to arriving at the true intent of each part. Effect must be given, if possible, to the whole instrument, and to every section and clause. If different provisions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. Cooley, Const. Lim. 70. Isolated passages of the instrument must not be considered alone; the entire chart must pass in review. If this section 1, art. 14, stood alone, there would be no limit to the power of the legislature to change

official salaries during the terms of the several incumbents. But the general words of the section are modified by all the inhibitions against a change during the term of service as to the judges and the more important state officers. It is modified by the special provisions regarding the compensation of members of the legislature. It is modified by the maximum limits imposed as to the salaries of county officers, and the basis of assessed valuation of the counties in fixing their compensation. It is further and generally modified by this general section 32, art. 3, as all salaries must be fixed by law, and no law shall increase or diminish the salary or emolument of any public officer after his election or appointment. In Pennsylvania, the salaries of some officers are based upon population, and the provision of the constitution of that state is so much like ours that we quote what was said by the supreme court of that state upon the question of the compensation of an officer under the salary act of that state: "Whenever an effort is made to apply this act to an officer of any particular county, the fact to be ascertained is whether the county contained sufficient population at the time the officer entered upon the duties of his office. Whatever the population may have previously been or what it may thereafter become does not control the case." Monroe v. County of Luzerne, 103 Pa. St. 278. See, also, Apple v. Crawford Co., supra. The salaries given to county treasurers are not inadequate, as fixed by the constitution or the statute, even if this could be considered. They may have deputies, when needed, by the permission of the county board, to be paid for by the county; and this large power to provide deputies for county officers is a constitutional grant, (section 4, art. 14,) and has been exercised by the legislature. It does not appear that the assessment of taxable property was used to indicate the volume of business of a public office, as that may depend much more upon population than assessable wealth. It evidently does not, as our constitution is probably the only one that makes the assessed valuation of a county the guide in determining the amount of a county officer's compensation. It is clear that this criterion established in our constitution is that of the means and ability of the people to pay. An increase of business in a public office does not depend necessarily on the tax-

able wealth or the revenues of the county alone. Even if it does, the duties of state officers and judges, even of the legislators, may be largely increased by this increase of taxable wealth or by increase in population, and yet there is no relief for these officials except resignation. State officers are not allowed deputies under pay, as county officers are. It is more reasonable to suppose that in a new and growing commonwealth the duties of the executive, administrative, and judicial state officers would be more largely increased with increasing wealth and population than officers for a county,—a portion of the state. Their terms are longer, and the hardship in prohibiting an increase in their compensation greater, than in the case of county officers. Why should county officers be excepted from the constitutional prohibition as to an increase of their salaries? There is no reason for it. It is absurd to say that the legislature should not be exposed to the gainful schemes of officials, and may not be besieged by importunate officers, and transfer the scene of such conflicts from the legislative halls to the meetings of a board for the equalization of assessments of property for taxation purposes, the most delicate duties known to our laws,— that of equitably distributing the burdens of government. The assessment of a county should not be dependent upon the question of raising or lowering the salaries of the county officers. We do not believe that the law can be made to do indirectly what it may not accomplish directly. This is discountenanced in all courts where the question has been submitted embracing an increase of salary in the office of an incumbent. See Greene v. Freeholders of Hudson Co., 44 N. J. Law. 391; Larew v. Newman, 81 Cal. 588, 23 Pac. Rep. 227; Barnes v. Williams, 53 Ark. 205, 13 S. W. Rep. 845. The authorities all take the ground that no law or procedure under the law can be used as a cloak for constitutional violations. The effect and operation of a law must be looked to, as well as its naked provisions, and nothing should be tolerated under color of a law that is a palpable evasion of the constitution. It would be a dangerous practice, at the threshold of our existence as a state, to so loosely construe a statute, and to set aside a wise and healthy constitutional restriction and limitation of legislative power.

Some argument has been made to us that the word "emolument," of section 32, art. 3, has the meaning of "fees," and that the provision prohibiting the increase of official fees during an official term is guarded against. Of course, there can be no increase of the amount of the fee to be charged for each particular official service where fees are allowed, but the fees may increase with the increase of business, and this is not an increase in the fees, but in the volume of business. There is a further provision in section 1, art. 14, that has an important bearing on this case, and that is that the salaries of all officers shall be "fixed and definite." These words have a precise and certain meaning. They mean a certain, precise, exact, and clear salary; not one that shall be sliding up or down with the fluctuations of the assessment of the county. Construing them with the constitutional provision fixing salaries of county officers, they mean a fixed and definite salary per year; construing them with the constitutional inhibition against an increase or decrease during the term of an officer and after his election or appointment, they mean a fixed and definite salary for the term of office. Thus construing these different constitutional provisions together, there is no doubt that they interpret themselves, and that they mean that the salaries of county officials cannot be increased or diminished during the official term, including the interval between the election or appointment and the induction of the official into office. The reform in the constitution was a needed one. It was recognized before the adoption of the instrument, when there was no such restriction upon the legislative power which it contains, as the last territorial legislature provided that the salary acts passed at that session should not affect the incumbents then in office. It was an abolition of all that was possible to abrogate in the fee system under which vicious practices had flourished in other jurisdictions. It seeks to purify and elevate the public service by making these offices so near the people not so remunerative as to tempt the corrupt or avaricious. It was an effort in the direction of economy to prevent extravagance in the management of county affairs. It prevents the legislature from being assailed by the demands of importunate officials to the detriment of the public business, and it cultivates official independence instead of "the thrift that follows fawning." It makes office seeking

Board of Com'rs v. Burns.

and office holding honorable to all. These efforts should not be in vain. Not considering the inhibition of the constitution against a change in official compensation during the official term, it follows that the fixed and definite annual salary of the defendant in error cannot be increased or diminished during the first official year of his term, when once fixed for that year, as of the beginning of his term. Considering the broad constitutional inhibition, it cannot be increased or diminished during any part of his official term, nor after his election or appointment. The judgment of the district court of judicial district No. 1 sitting for the county of Converse is reversed, and this cause is remanded to that court for further proceedings therein in harmony with the views herein expressed.

MERRELL, J., concurs.

CONAWAY, J., (*dissenting.*) While not dissenting from a large portion of the majority opinion in this case, I am compelled to dissent from the decision. I think the premises do not support the conclusion. I concur that the legislature had authority to enact the statute to be construed, under the concluding clause of section 32, art. 3, of the constitution, and that it is applicable as though it had been passed before the election of defendant in error. I concur that the statute fixing salaries for county officers is within the constitutional limits, and is repugnant to no provision of the constitution. It is claimed that the salary of a public officer cannot be increased or diminished during his term of office under any circumstances. If this be true, then some of the most important provisions of article 14 must often become a dead letter, as well as statutory provisions enacted to carry them into effect. A county, at the beginning of the terms of any or all of its officers, may be a county of the second class; that is, have an assessed valuation exceeding $2,000,000 and not exceeding $5,000,000. By the next legal assessment thereafter it may be a county of the third class; that is, have an assessed valuation less than $2,000,000 and exceeding $900,000. Then, if the salaries of the officers cannot be changed during their terms, the county with an assessed valuation less than $2,000,000 for the greater portion of the terms of its officers would be compelled to pay its sheriff a salary at the rate of $2,000 per year, although the constitution says, in express words: "In the counties having an assessed valuation not exceeding two millions ($2,000,000) of dollars the sheriff shall not be paid more than fifteen hundred dollars per year." And the county would be compelled to pay the county clerk $1,800, although the constitution says not more than $1,200; the county treasurer $1,800, where the constitution says not more than $1,000; the county assessor $1,200, where the constitution says not more than $1,000; the county and prosecuting attorney $1,500, where the constitution says not more than $1,000; and the county superintendent of schools $750, where the constitution says not more than $500. And so of counties passing from above to below $5,000,000 in assessed valuation. And such instances are not rare. They occur both from a decrease in the wealth of portions of the state, and from the division of counties for the purpose of forming new counties. No construction of a statute thus leading to inevitable conflict with express constitutional provisions should be tolerated. And where is the necessity for such construction in this instance? It is said it is because the statute terms the salary an annual salary, therefore it cannot change during an official year. I cannot concur in this view. We have no right to assume that the word "annual" refers to an official year or a fiscal year of the state, or any particular year, or anything except the space of time known as a year, and this for the purpose of fixing the rate of the salary. I have always understood an annual salary to be, in the language of the majority opinion, "a salary reckoned and computed by the year." The rate of compensation is so much per year for the time of service, be it long or short, entire years or fractions of years; and such a salary, in case of a private employment, may change at any time in accordance with the terms of the contract of employment, or, in case of a public officer, in accordance with the law. This change will take place on the occurrence of any contingency specified in the contract or in the statute as having that effect. The words "annual salary" do not import, *ex vi termini*, a salary for just an even year, but it is a salary which may be earned and calculated and paid not only for an even year, or any number of even years, but for any fraction of a year; and it may be increased or diminished at any time by law or contract, as the case may be. This is according to

Board of Com'rs v. Burns.

universal custom, and it is so plain that the attorneys for plaintiff in error never raised the question. The point was not raised in the court below, nor in the briefs or argument of counsel in this court; but it is raised for the first time by the majority of this court of its own motion in its opinion. I could not follow even the distinguished supreme court of Kansas in its view of this question if it had been called upon to pass upon it; and certainly I cannot follow it as expressed in a case decided upon the point that the court would take the population from the census of its own state, and not from the census of the United States. See Turner v. Commissioners, 27 Kan. 639, (cited in majority opinion.)

I do not dissent from the proposition of the majority opinion that the constitution regards the ability of the people to pay in fixing the limits of the salaries of county officers according to the assessed valuation of the counties. It follows that a county with an assessed valuation of less than two millions should not pay up to the limit fixed for a county with an assessed valuation of more than two millions, and every year or month or week or day that this is done the constitution is violated both in letter and in spirit. I concur in all that is said in the majority opinion in reference to economy, and restrictions upon appropriations. But a construction of a statute producing the above result is not in the interest of economy, and it destroys the effect of constitutional restrictions upon legislation. It makes careful, equal, and just appropriations uncertain, unequal, unjust, and not in proportion to the ability of the people to pay, as ascertained in the constitutional way, by assessed valuation. At the same time it makes the salaries of county officers not in proportion to the value of the services rendered and the duty performed, as ascertained in the same constitutional way. These premises of the majority opinion do not support its conclusion, but the reverse. I concur and insist that all constitutional provisions bearing upon the question be construed together. Section 1, art. 14, was relied on by plaintiff in error as sustaining its view. I concur with the majority that it does not; that, so far as that section affects the question, the legislature might change the salaries of county officers at any time. But section 32, art. 3, is principally relied upon by plaintiff in error and in the majority opinion as prohibiting any increase

or decrease in the salaries of county officers during their terms. It reads, omitting the concluding clause: "Sec. 32. Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument, after his election or appointment." I concur that this should be considered in connection with the constitutional inhibition against the increase or diminution of the salaries of judges and state officers during their terms. It is insisted that this indicates that section 32 means the same as to all public officers. I know of no rule of law, and can imagine no reason, why words of such different import in the same instrument should be construed to have the same meaning. I have understood the rule to be, and must adhere to my understanding of the rule, that some meaning and effect should be given to each provision of an instrument of writing where practicable. If the intent of section 32, art. 3, were to prohibit any and all increase or diminution in the salaries of public officers during their terms it would have been easy to say so in plain and direct words. If such were its effect, it would render superfluous the provisions of section 17, art. 5, prohibiting any increase or decrease in the salaries of supreme and district judges during their terms, and the provision of section 13, art. 4, to the same effect as to most other state officers. These provisions would be utterly nugatory. They could have no effect whatever,—a result condemned by all systems of construction and by right reason. I concur that the principal evil to be remedied by section 32, art. 3, is the temptation to legislators to reward friends by extending their terms or increasing their salaries, and to punish enemies by decreasing their salaries by laws passed after their election or appointment. It is not at all consistent with this view to construe the section as applying to laws passed before their election or appointment, nor to the statute in question which is to be so considered. As to the constitutional questions so far presented, I may well say I concur with the opinion of the majority. Therefore I dissent from the decision of the majority.

I might well stop here and consider my dissent amply sustained. But there are some propositions in the majority opinion in which I cannot concur. I quote: "It is contended that this salutary inhibition (section 32, art. 3) of the constitution

Board of Com'rs v. Burns.

does not apply to county officers, as it is otherwise provided in the constitution that the salaries of county officers can be increased or diminished after their election and appointment and during their term of service." I have heard no such contention. I understood the defendant in error to argue, by his attorneys, and I think the arguments which I have abstracted from the majority opinion prove, that the "salutary inhibition" of section 32, art. 3, does not apply in this case; neither to any law passed before the election or appointment of any officers whose salaries may be in question; neither to interfere with the operation of any other provisions of the constitution. With these limitations, which seem obvious enough, the inhibition evidently applies to county officers. I quote again: "It is urged that the expression, 'no law' shall increase or diminish the compensation, cannot be applied here, as the law does not do so; but it is the fact of the annual assessment changing the county from one class to another that increases or decreases the compensation. This is strange reasoning." It is also said that the only way in which salaries can be "fixed" is by law. I have heard stated in argument, what no one has attempted to deny, that the law did fix the salaries of county officers, and has never changed them; and that they never have been changed. Facts have changed so as to entitle defendant in error to a different salary as fixed by the law from the one he was entitled to "after his election" or at the beginning of his term. But the law never fixed the salary of the county treasurer of Converse county. The law fixed three salaries, any one of which might become payable to the treasurer of Converse county according to her assessed valuation. This valuation is what is termed, properly enough, an "extraneous fact;" and it is a fact which determines the amount of the salary of the county treasurer under the present law. The law never provided in terms any salary for N. E. Burns. He became entitled to a salary by the extraneous fact of becoming county treasurer of Converse county. The law did not determine what his salary as the treasurer of Converse county should be. It might be any one of three already fixed by law. The law does not determine which. It requires again the extraneous fact of the assessed valuation. I cannot perceive that there is anything strange in all this. Neither can I perceive

why there should be difficulty or difference of opinion in regard to the case. It seems to me that the controlling facts of the case, and principles, too, are unquestioned and unquestionable. But it is strange, and to me past finding out, where the provision of law is which prevents any one from showing extraneous facts at any time entitling him to any salary whatever which is fixed by the law. It is certain if he is not allowed to show the facts he can receive no salary. And when he shows facts entitling him to one salary he cannot receive some other salary. The entire operation of the salary law for county officers is the fixing of salaries in general terms by the law, and individuals becoming entitled to one or the other of these salaries, which is determined by extraneous facts corresponding to the terms of the law. The law fixes salaries generally, and can change them, as fixed, only by a change in its provisions. Such change cannot affect the salaries of officers already elected or appointed at the time of the change in the law. If the constitutional inhibition meant more than this, and meant to prevent any and all increase or decrease by any means in the rate of emolument actually received by public officers during their terms, it would have been far easier to say so than to put the inhibition in its present form. It positively bristles with limitations and qualifications. It provides that no law shall extend the term, or increase or diminish the salary or emolument of a public officer, after his election or appointment. If it prevents increase or decrease in salary by virtue of a law already in force at the time of the election or appointment, it equally prevents extension of the term. Then the law providing that officers shall hold their offices until their successors are elected and qualified must fail, even if it result in the suspension of any or all departments of the government. It is urged that the effect of the constitutional inhibition against increase or decrease of salary or emolument after election is to fix the salary at the rate to which the officer becomes entitled at the commencement of his term. But the inhibition applies after the election, and before the commencement of the term. It cannot mean to fix the salary at the rate the officer is entitled to receive during this period, for he then receives nothing. And it must mean the same at one time as at another. The only effect it can have before the beginning of

the term is to prevent a change in the law. Why should it have a greater effect afterwards? And the same language applies to emolument by fees as to salaries. The emolument by fees will change continually. As to fees, all the effect the constitutional provision can have is to prevent a change in the law after the election or appointment of the officer entitled to them. Can the same language have a different meaning applied to salaries? It is not denied that the construction by the majority of this court of section 32, art. 3, seriously interferes with the operation of article 14, and the statute passed to carry its provisions into effect, and in great measure defeats them. This article provides that salaries shall be in all cases according to the value of the services rendered and the duty performed. It also limits the salaries of county officers according to the assessed valuation of the counties. Section 32, art. 3, by its terms cannot interfere with other constitutional provisions. It is argued that the salaries of county officers should not be increased or diminished during their terms, even in accordance with these provisions, and with laws passed to carry them into effect. And why? Because the salaries of judges and most state officers cannot be changed during their terms, there being special constitutional provisions to that effect. There being no such constitutional provisions as to county officers, we must supply them. This is a royal addition to the established rules of constitutional construction. Formulated, it must read something like this: The constitutional provisions as to change in the salaries of county officers during their terms differ from the constitutional provisions as to change in the salaries of state officers during their terms. Therefore they should be construed to mean the same. And yet the majority opinion tells us with an emphasis savoring at once of virtue and patriotism that it would be a dangerous practice, at the threshold of our existence as a state, to loosely construe the constitution or wink at violations of the fundamental law. This is an admirable sentiment, but it is not an appropriate conclusion to an argument which is to the effect that constitutional provisions, and statutes adapted to carry them into effect, should be incontinently kicked out of court. The results to which this decision leads cannot be ignored. Counties may and do decrease in assessed valuation, as

well as increase. A county of the first class may become a county of the fourth class. More frequently they pass from the first to the second, second to third, etc. This may be by the first annual assessment after the beginning of the terms of the salaried officers. The board of county commissioners may well refuse to pay them for the remainder of their terms salaries far in excess of the constitutional limit. A suit arises, and is brought to this court. This court must say to the county board: "It is true you have an assessed valuation of less than two millions of dollars. It is true these officers are claiming salaries far in excess of the constitutional limit for such a county to pay. But from considerations of economy you must pay them what they claim; and because it would be a dangerous practice at the threshold of our existence as a state to loosely construe the constitution or wink at a violation of the fundamental law." And the counties, while being bankrupted in violation of the constitution and law, are helpless. They can only say, "It is strange." It is useless to enlarge upon the matter. I will not attempt to canvass all the objections to the decision in this case. But, in conclusion, I desire to enter my protest against it. I cannot look upon it otherwise than as a patent subversion of important constitutional and statutory provisions, and of the just and beneficent policy of compensation to county officers, graded according to the value of the services rendered and the duty performed, and having regard at the same time to the ability of the people to pay, both ascertained in the constitutional way by the assessed valuation of the counties. I protest against the meaning and effect given to the phrase "annual salary." It will have the effect to interpolate into every contract containing the words a meaning not contemplated or thought of by the parties, and to bind them to terms which they never considered, and never agreed to. It will interpolate into every law containing the words a meaning beyond and in addition to the ordinary meaning and effect of the words and the intention of the legislature. The decision in this case will, in my opinion, subvert and destroy, in great measure, the financial policy, conceived in the interest of economy, equality, and justice, and embodied in our constitution and laws, of paying officers moderate salaries, fixed in proportion to the value of the

services rendered and the duty performed. I protest against the decision as contrary to justice and public policy, and far-reaching in disastrous results.

### ON REHEARING.

#### (July 1, 1892.)

GROESBECK, C. J. Since the filing of the opinion in this case and the entry of judgment thereon, a motion for a rehearing was filed within the time prescribed by the rules of this court. At the suggestion of the court, counsel for defendant in error filed his brief used in the original hearing, instead of filing a new brief on the motion for rehearing. It was then understood that the motion would not be heard or set down for argument, until a cause presenting the same constitutional question then pending before the supreme court of Pennsylvania should be decided by that court. The decision of the lower court in that state was directly contrary to the views expressed in the majority opinion of this court in this case, but it seemed to us that it was not in line with the decisions of the supreme court of that state. We have now this Pennsylvania case before us, (Guldin v. Schuylkill Co., 24 Atl. Rep. 171, decided May 16, 1892.) It is in harmony with our views. The plaintiff there was elected coroner of Schuylkill county at a general election held in 1889, and entered upon his official duties on the first Monday of January, 1890. At the time of his election and induction into office, the population of his county was much less than 150,000, as ascertained by the census of 1880. By the decennial federal census of 1890, taken during the first year of his official term, the county has a population exceeding 150,000. By an act of the Pennsylvania legislature, passed before the election of the plaintiff, to carry into effect a constitutional provision, the coroner of counties having a population over that number, in common with other county officers, was to be paid a salary instead of fees. The provision of our constitution as to change in the compensation of a public officer after his election and appointment is as follows: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment;" while the inhibition in the constitution of Pennsylvania omits, we believe, the first clause, "except as oth-

erwise provided in this constitution." Our constitutional provision in this respect was borrowed from the Colorado constitution as originally framed and adopted. We do not see that this clause changes the situation. It is otherwise provided as to the extension of the terms of officers elected at the first state election, by adding the interval after their qualification and the beginning of the regular terms to such terms. Again, the provision might be applied to officers receiving fees instead of salaries, where there is no fixed or certain amount of compensation, but it does not seem to us that there is an exception as to county officers. They must be paid "fixed and definite" salaries by the terms of the constitution, and these words necessarily exclude the idea of a change in the salaries in the middle of an official year, or during an official term. The law regulating salaries of county officers does not assume to provide for a change according to the assessment of taxable property during an official term, or after the election of such officers; and it cannot be so construed, as every law must be so construed, if possible, as to be in harmony with the constitution, and not against its provisions. This we have done, as the act uses the same words as employed in the constitution, or those of similar import and equivalent meaning, and these must be not so enlarged as to make the act unconstitutional, either in its terms or in its operation. The supreme court of Pennsylvania held that this constitutional inhibition as to change in official emoluments should be construed with the other provision providing for salaries in counties having more than 150,000 population, reading them as if embodied in the same section, as follows: The "compensation of county officers shall be regulated by law, [and] in counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary, [but] no law shall increase or diminish his [a public officer's] salary or emoluments after his election or appointment." The plaintiff in that case was elected and went into office under a law providing for his emoluments in the shape of fees, and the law providing for salaries in counties having more than 150,000 inhabitants, if applied to him during his official term, would cause a transition from the fee system to that of salaries in the middle of his term. It was held that, inasmuch as his emoluments in the form of

fees would be diminished during his term by the operation of the law providing for a salary when his county reached the requisite population to require its officers to be paid salaries instead of fees, it was repugnant to the inhibition of the constitution, which prohibited a decrease in his emoluments after his election and appointment, and that the provision of the constitution, requiring that county officers should be paid salaries instead of fees, when it passed the limit of 150,000 inhabitants, was modified by the general provision prohibiting a change, after his election, in his emoluments. The reasoning may well be applied to the case before us. The salaries of county officers, by our constitution, like the compensation of such officers by the constitution of Pennsylvania, must be regulated "by law," and any limitation upon the lawmaking power upon this subject, though appropriately placed in the article upon legislation, would necessarily be a qualification upon any constitutional mandate fixing the salaries of county officers. We held that our constitution provides for fixed and definite salaries for county officers, ascertained by law according to the assessed valuation of the county, within the maximum limits prescribed by the constitution, and that these salaries, when once fixed and ascertained at the time of the election of the officer, or as of that time, could not be increased or diminished after such election, or during the term of such officer, either for the first or any subsequent year of his official term. His salary is a fixed and definite annual salary which cannot

v.3wyo.—25

be changed after his election or induction into office, either during the first year or any period of his official term. The stability and permanence of the salaries of these officers we believe to be guarantied by the constitution, after once ascertained, secure during the official term from legislative control, or the indirect action of a board of county commissioners equalizing and assessing the taxable property of the county. It is unnecessary to further rehearse the reasons for these various constitutional provisions, as they were discussed at length in the opinions in the case. The Pennsylvania decision is in point, and sustains our views. The motion for a rehearing is denied.

MERRELL, J., concurs.

CONAWAY, J., (*dissenting*.) For reasons given on first hearing, I cannot concur in the majority opinion. The Pennsylvania case is not in point. Several provisions of our constitution affect the decision which are not in the Pennsylvania constitution. *Inter alia*, it is "otherwise provided" in our constitution that within certain specified limits the salaries of county officers shall be "fixed by law" according to the assessed valuation of the counties. This is a plain grant of legislative authority, as well as a plain specification of a legislative duty, to so "fix" the salaries of county officers. The performance of this duty should not be defeated by construction. Other constitutional provisions have been discussed. I will not reiterate.