# GUTHRIE v. BOARD OF COMMISSIONERS OF CONVERSE COUNTY.

FORMER DECISIONS UPON CONSTITUTIONAL QUESTIONS, AS *Stare Decisis* — CONSTITUTIONAL LAW — OFFICIAL SALARIES.

1.  A previous well-considered decision of the Supreme Court upon a doubtful question of constitutional construction should not be lightly disturbed or departed from, and unless it is quite clear that manifest error has crept into such a decision, it should be allowed to stand.

2.  Although the salaries of county officers are fixed by reference to the class in which the county belongs as determined by its assessed valuation, the salary of a county officer remains at the same amount during his term, notwithstanding that during such term the class of the county is changed by increase or decrease in the assessed valuation of the taxable property therein; since Section 32 of Article 3 of the Constitution prohibits an increase or decrease of the salary of a public officer after his election or appointment. (Board etc. v. Burns, 3 Wyo., 691 followed and approved.)

CONAWAY, C. J., dissenting.

[Decided September 27, 1897.]

ERROR to the District Court for the County of Converse, HON. RICHARD H. SCOTT, Judge.

Silas Guthrie appealed to the District Court from an order of the Board of County Commissioners of the county of Converse, disallowing his claim for a balance claimed to be due him upon salary as county clerk. The cause was tried upon an agreed statement of facts, and judgment was rendered for the county. The appellant, Guthrie, prosecuted error. The material facts are stated in the opinion.

*John W. Lacey*, for plaintiff in error, argued and contended that every element and provision of the constitution and statute is fully and literally complied with by holding that the instant an assessed valuation in any county shall cause that county to pass from one class

to another, that instant the salaries of the officers of that county must be paid according to the new class into which the new county enters by its new valuation ; that the constitutional inhibition is against legislation of a particular kind, and is directed solely against statutes which, of themselves, without extraneous facts, shall seek to increase or diminish the salary of an officer during his incumbency. It was also contended that the statute classifying counties is not violative of the constitutional prohibition, if an increase or diminishment of salary follows from a change in class, and counsel cited : L. 1890–91, Chap. 55; Const. Art. 3, Sec. 32; id., Art. 14, Secs: 1 and 3 ; San Luis Obispo Co. v. Felts, 37 Pac., 780 ; State ex rel. v. Carson, 6 Wash., 250.

*John C. Baird*, for defendant in error, argued and contended that the constitutional limitation applied to any law enacted at any time, whether before or after, that should seek to change an official salary after election or appointment; that salaries may be raised or lowered as the assessed valuation of the county may change, but the officer already elected or appointed, whether actually qualified or not, can not be affected; that there is no difference in principle between the case of a law passed after election affecting a salary, and the taking effect of a previous statute upon the happening of some event, as the evil is as great in one case as in the other; that it would matter little whether a salary were increased by statute or a simple device of raising the assessed valuation of the county. Without the *law* the *extraneous facts* could have no operation. It is, therefore, the law which authorizes the increase or decrease, simply depending for the time of its application to the occurring of a given contingency. This the constitution is intended to, and does prohibit. Counsel cited, in addition to the constitution and statutes, the following: Miller on the Const., 476; 116 U. S., 131; State v. Raine, 49 O. St., 580; Guldin v. Co., 149 Pa. St., 210; Board etc. v. Burns, 3 Wyo., 691; Throop on Pub. Off., 19; Com. v. Adams, 95 Ky., 588; Mudgett

v. Liebes, 14 Wash., 482; Carlisle v. Henderson, 17 Colo., 532; Ballard v. Keane, 13 Wash., 201; Council Bluffs v. Waterman, 86 Ia., 688; Welsh v. Bramlet, 988 Cal., 219; State v. Mc Clure, 91 Wis., 313.

POTTER, JUSTICE.

This case reached the district court upon an appeal from the action of the Board of County Commissioners of Converse County, disallowing the claim of the plaintiff in error for a balance alleged to be due him upon his salary as county clerk of that county. The case was heard without a jury upon an agreed statement of facts, and the action of the board was sustained.

The facts as agreed to are substantially as follows: That at the election held in Converse County, upon the 11th day of September, 1890 (the first election held under the State constitution), the plaintiff in error was elected to the office of county clerk for the term of two years, beginning on the first Monday in January, 1891, and that he duly and regularly qualified as such officer on the first Monday in January, 1891, and assumed the duties of said office, and continued as such officer until the first Monday of January, 1893. That the assessed valuation of said county for the year 1890 was more than $900,000, and not exceeding $2,000,000, thus placing the county in the third class, within the meaning of the act of January 10, 1891, entitled, "An Act providing for the compensation of county and precinct officers, and the fees to be charged in certain cases and disposition of the same, and repealing certain statutes concerning them." That, as determined according to law, on the 27th day of August, 1891, the assessed valuation of the county was $2,125,347.61, thus placing the county during the continuance of that assessment within the second class. That, as finally determined, on the first day of September, 1892, such assessed valuation was more than $900,000, and not exceeding $2,000,000, thus returning the county to the third class. That, for

7

the year 1892, the county paid to plaintiff in error for his compensation as county clerk the sum of $1,200.00, and no more. That thereafter, in the year 1893, and within the time prescribed by law, he presented his claim for $600.00, alleged to be due him for his services as such officer during the year 1892, which was disallowed. The correct presentation of the claim and the regularity of the appeal proceedings were admitted. The statement of facts closes with the following : "And now it is agreed between the parties hereto, that if the amount of the plaintiff's salary as such county clerk for the year 1892, was the sum of $1,200.00, then the finding and judgment shall be for the defendant; but if the plaintiff's salary as such county clerk for the said year 1892, or for any part of such year, was at the rate of $1,800.00 per annum, then the finding and judgment shall be for the plaintiff, and the amount of the plaintiff's recovery shall be the difference between the rate of $1,200.00 per annum, at which he was paid as aforesaid, and the rate of $1,800.00 per annum, at which he should have been paid, the same to be computed for the time in said year during which he was entitled to receive an annual salary of $1,800.00."

The constitution requires that county officers, with some minor exceptions, shall be paid "fixed and definite salaries," and that the Legislature shall from time to time fix the amount of such salaries as are not already fixed by the constitution, "which shall in all cases be in proportion to the value of the services rendered and the duty performed." (Art. 14, Sec. 1.)

The constitution also establishes a maximum limit for the salaries of the respective county officers, according to assessed valuation, within which limit the salaries may be fixed by law, the provisions affecting the office in question being as follows: "In counties having an assessed valuation not exceeding two millions of dollars, * * * the county clerk shall not be paid more than twelve hundred (1,200) dollars per year." "In counties having an

assessed valuation of more than two millions of dollars, and not exceeding five millions of dollars,  *  *  *  the county clerk shall not be paid more than eighteen hundred (1,800) dollars per year." (Art. 14, Sec. 3.)

The first State Legislature designated the salaries to be paid county officers, classifying the counties according to assessed valuation, those with an assessed valuation. of more than five million dollars, being described as counties of the first class; those with an assessed valuation of more than two million dollars and not exceeding five million dollars, as counties of the second class; and those whose assessed valuation is more than nine hundred thousand dollars, but does not exceed two million dollars, as counties of the third class; and those wherein such assessed valuation is less than nine hundred thousand dollars, as counties of the fourth class. (Chap. 55, Laws 1890–1891, Sec. 1.) That act fixed the salary of county clerk, in counties of the second class, at eighteen hundred dollars per annum, and in counties of the third and fourth class at the sum of twelve hundred dollars. (Sec. 2.)

The question in this case arises upon the construction to be given to the constitutional and statutory provisions already referred to in connection with Sec. 32 of Art. 3 of the constitution, which reads as follows: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary, or emolument, after his election or appointment; but this shall not be construed to forbid the Legislature from fixing the salaries, or emoluments, of those officers first elected or appointed under this constitution, if such salaries, or emoluments, are not fixed by its provisions." The salaries of county officers, first elected under the constitution, were not fixed by its provisions, and the legislative enactment above referred to was passed to accomplish that object. That act was silent respecting such a contingency as arose in Converse County.

It is contended on the one hand, that if the statute authorizes an increase or decrease in the salary of an

officer, after his election, it is to that extent void; and that a law which would operate to produce that effect would be repugnant to Sec. 32 of Art. 3, above quoted. On the other hand, counsel for plaintiff in error strenuously insists that the constitution inhibits only the increasing or diminishing of an officer's salary, after his election by a law which of its own force, without extraneous facts coming to its assistance would have that operation; that, as the organic law requires, necessarily, a classification of counties, according to assessed valuation, for the purpose of fixing salaries, when the legislature has made the classification, and provided the amount of salary to be paid in each class, if by reason of the passing of a county from one class into another, the salaries are raised or lowered, it is the result of natural extraneous causes, and the law has not increased or diminished the salary, but that the provisions of the constitution placing restrictions upon the salaries of county officers contemplates the possibility of change arising in that manner.

This precise question was before this court, and determined in the case of Board of Commissioners of Converse County v. Burns, 3 Wyo., 691. In that case the majority of the court decided the question adversely to the position taken by counsel for plaintiff in error. It was there held that the salaries of county officials could not be increased or diminished during the official term, and the increase claimed by the county treasurer of the same county, during the same period and upon the same facts as in the case at bar was denied. From the conclusion reached in that case, the present chief justice dissented, while the personnel of the other members of the court has changed.

It was suggested on the argument that no rule of *stare decisis* applies to a reconsideration of the question by this court as no rights of property or contract are involved. But it seems to me that a previous well considered .decision of the Supreme Court upon a doubtful question of constitutional construction should not be lightly disturbed

or departed from, and that unless it is quite clear that manifest error has crept into such a decision it should be allowed to stand.   Any other policy would operate to continually unsettle such matters, and judicial decisions concerning them would not be credited with much stability, or be entitled to that respect which they ought to command.   Had I some doubts about the correctness of the former conclusions of the court, I should hesitate to overturn them.

Upon independent consideration, however, I agree with the conclusions announced in that case with regard to the construction of the constitutional provisions.   The interpretation which the court gave to the constitution appears to me to preserve its spirit and policy, and renders all its various provisions germane to the subject of salaries of county officials harmonious.   I can not coincide with the proposition that an increase in the salary of an official during his term on account of a change in assessed valuation of the county, and its consequent transformation into another class is not the result of the law fixing the amount of the salaries which such officers shall receive. The only basis for the salary is the legislative enactment; and I fail to observe any practical distinction between a law which in express terms proposes to supply an officer with such increase, and one which furnishes a standard by which the increase is made possible.   In either case the law has increased the salary, when, if the standard is followed, an increase results.   Neither do I think that the opening phrase of Section 32, "Except as otherwise provided in this constitution," affects this question, for the reason that the article particularly referring to salaries does not in my opinion make any other provision.   The argument that Section 3 of Article 14 would be violated by the payment to an officer of a salary greater than the maximum limit provided in the constitution, in consequence of a decrease in assessed valuation, during an official term, is not without force; yet, upon reflection, it seems clear that we must regard the constitutional

limitations upon the amounts which may be paid to the respective county officers, as qualified by Sec. 32 of Art. 3, so that attached to such limitations is the condition that the salary of an officer shall not be increased or diminished after his election or appointment; and in this view in the case supposed, there would not result a violation of the constitution.

As the question was elaborately discussed, and the authorities were very generally reviewed in the opinions in the Burns case, I do not conceive it necessary to enlarge upon what has already been said.   For the reasons stated, it follows that the plaintiff in error is not entitled to the amount claimed, and the judgment must be affirmed.

*Affirmed.*

CORN, J., concurs.

CONAWAY, CHIEF JUSTICE, dissenting.

I.  For about one year of the term of plaintiff Converse County was paying, and her officers were receiving, several thousand dollars less than other counties of the same class were paying for similar services.   By the construction of constitutional provisions now established in regard to the matter, this unequal and inequitable condition will continually recur among the counties.   This is not paying "in proportion to the value of the services rendered, and the duty performed."   I can consider it as no less than a violation of this constitutional provision, without necessity therefor.   The Legislature had provided fixed and definite salaries, the same in amount in all counties of the same class.   Such salaries should be paid, in the language of the constitution, "in all cases."

II.  Where the constitution intends a general prohibition of increase or diminution in any officer's salary, during his term, it says so without limitation or exception. (See Sec. 13, of Art. 4, and Sec. 17, of Art. 5.)   Prohibitory language of limited meaning and application, does not make a general prohibition.   Where exceptions to a prohibition are provided for, the prohibition is not general.

The provision, " No law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment," is an intimation that such increase or diminution may be effected otherwise.

But if this provision standing alone is to be construed as general in its effects, where do the exceptions as to salaries come in ? Where shall we apply the words, " Except as otherwise provided in this constitution " ? It seems to me that the answer is not a matter of doubt. It is otherwise provided in this constitution that salaries shall, in all cases, be in proportion to the value of the services rendered, and the duty performed.

Consequently, they should change accordingly. · The more readily the salaries change with change in value of services rendered, and duty performed, the more efficiently is the constitution carried into effect in letter and spirit.

III. If Sec. 32 of Art. 3 of the constitution has the effect of prohibiting generally, changes in the salaries of officers during their terms, it makes redundant the provision of Section 13 of Article 4, prohibiting such change in the salaries of most of the executive officers of the State, and the provision of Section 17, of Article 5, prohibiting such change in the salaries of judges of the supreme and district courts. This result is opposed to sound canons of constitutional construction.