## NICKERSON ET AL. v. WINSLOW, AS COUNTY AND PROSECUTING ATTORNEY.

### (No. 765.)

COUNTIES—OFFICERS—COMPENSATION—STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.

1. Where it is declared in an act amendatory of a former statute that it shall take effect and be in force from and after a future day therein stated, the act, prior to that time, is inoperative, of no force and effect, and not notice to anyone.

2. Chapter 38, Laws 1911, amending and re-enacting Section 1070, Wyoming Compiled Statutes, relating to classification of counties for the purpose of fixing the compensation of county and precinct officers, did not become effective until December 31, 1912, that being the date from which it was declared in the act that it should take effect and be in force, and hence did not affect or control the salary of county officers elected at the general election in November, 1912.

3. Said act of 1911 not being in force or effect at the time of the election of county officers at the general election in November, 1912, the salary of the officers so elected became fixed and determined according to the classification of counties for that purpose in force at the time of said

election, and therefore upon the basis of the assessed valuation of the county for the year 1912.

4. The salary of the county and prosecuting attorney of Fremont county became fixed at the time of his election in November, 1912, as determined by the law in force at that time, without regard to Chapter 38, Laws 1911, changing the classification of counties for the purpose of fixing the compensation of county and precinct officers, which declared that it should take effect and be in force from and after December 31, 1912.

5. Although the term of a county officer elected at the general election in November does not commence until the first Monday of the following January, his salary becomes fixed and determined according to the law in force at the time of his election and cannot, by a law going into effect thereafter, be increased or diminished for that term, without violating the provision of Section 32 of Article III of the Constitution that "no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment", and, therefore, an act passed prior to such election but to take effect subsequent thereto amending the law classifying counties for the purpose of fixing the compensation of county officers cannot be applied so as to increase or diminish such salary for the term aforesaid.

[Decided February 3, 1914.]          (138 Pac. 184.)
[Rehearing Denied May 15, 1914.]          (140 Pac. 834.)

ERROR to the District Court, Fremont County; HON. CHARLES E. WINTER, Judge.

The action was brought by H. G. Nickerson and others, as taxpayers of Fremont County, and in behalf of all the taxpayers of the County, to recover from Loren E. Winslow, an alleged excess of salary received by him as County and Prosecuting Attorney of said County. From a judgment in favor of the defendant the plaintiffs brought error.

*John J. Spriggs,* for plaintiffs in error.

The defendant's salary is fixed by the salary act of February 17, 1911. Section 1 of Article 14 of the Constitution expressly authorizes an act for that purpose. That provision is mandatory and requires that the Legislature

shall "from time to time" fix or readjust salaries in propor-
tion to the value of services rendered and the duty per-
formed, which means in proportion to the ability of the
people to pay.    (Comm'rs. v. Burns, 3 Wyo. 703, 704).
The criterion of the ability of the people to pay being
wealth, the spirit and mandate of the constitutional pro-
vision is that a county classified as a second-class county is
able to pay a salary fixed to be paid by second-class coun-
ties.    Changes in the methods of assessment immediately
prior to the act of 1911, which caused a great increase in
the assessed valuation of all counties, without a corres-
ponding increase in actual wealth, was the occasion, and
sufficient reason, for the change made by the amendatory
act.    Courts cannot interfere with the operation of a stat-
ute, or nullify it unless the subject matter is unconstitu-
tional.    (Hillborne v. Nye, (Cal.) 114 Pac. 803).    All pre-
sumptions are in favor of the constitutionality of the stat-
ute, and it must appear beyond doubt that the subject mat-
ter of the act is unconstitutional before it will be so held.
(Daugherty v. Austin, (Cal.) 29 Pac. 1099; Swan v. U.
S., 3 Wyo. 150; Miller v. Henry, (Ore.) 124 Pac. 197;
Patterson v. State, (Okl.) 124 Pac. 942).    The subject
matter of the act of 1911 is admittedly constitutional.    The
theory of the constitutional provision (Sec. 32, Art. 3)
prohibiting an increase or decrease in the compensation of
a public officer after election is to forbid any change by
subsequent act, as by design or scheme which would change
the salary from that which the official understood it to be
when he was elected.    Such an evil is not possible by up-
holding the act of 1911, and applying it to the salary of the
defendant.    (Comm'rs. v. Burns, *supra;* State v. Burdick,
4 Wyo. 272).    The Constitution intends that there shall
be a fixed and definite salary for the term.    The act of
1911 does not change that.    It was clearly the intention
of the Legislature to provide for a change in salaries
commencing with the next official term, and to continue
during that term.    An officer accepting a public office with

a. fixed salary must perform the duties of that office for that compensation even though it may prove to be inadequate. (Moore v. Nation, 103 Pac. 113; Evans v. Trenton, 24 N. J. L. 764). The act aforesaid noes not change the defendant's salary after his election within the meaning of the constitutional inhibition. (Davis v. Comm'rs., 4 Wyo. 477; Guldin v. Schuylkill, (Pa.) 24 Atl. 171). The change was automatic and not a result of the law taking effect, for the law does not fix the salary directly but only upon the basis of the classification of the county according to assessed valuation from time to time. (See Smith v. Mathews, 103 Pac. 199). The act of 1911 should be held to apply to defendant's salary since it took effect before the commencement of his term and was clearly intended to apply to that term. (Puterbaugh v. Wadham, 123 Pac. 604; McNew v. Comm., (Ky.) 93 S. W. 1047, 100 S. W. 324; Stuhr v. Hoboken, 47 N. J. L. 147; Crockett v. Mathews, 106 Pac. 575; Smith v. Mathews, 103 Pac. 199; Applestill v. Gary, 123 Pac. 228; Williams v. Gary, 127 Pac. 825). The function of the court in the case at bar is purely one of construction, and the statute should be construed as plainly intended, that is, to make a provision as to salary so as not to affect incumbents, but those who might be elected for the new term to commence in January, 1913. Nothing else could have been intended. In the matter of construction of the statute the letter must give way to the spirit. (Hicks v. Krigbaum, 108 Pac. 482, 484; Frisbe v. State, 127 Pac. 1097). The assessed valuation was determined before election. The act was passed two years prior to the election. The only change in the act so far as this case is concerned is in raising the amount of the valuation to constitute a first-class county. The resulting change in the salary is therefore not by a law passed after election, nor by a change during the term caused by a change in the assessed valuation—which would be equivalent to a law passed after election. The act therefore does not violate the constitutional inhibition as to a change

in salary. The intent must govern the construction of the staute. (State v. Ducker, 127 Pac. 993; State v. High, 130 Pac. 614; Odell v. Rihn, 127 Pac. 802; *Ex parte* Russell, 126 Pac. ·876; *Ex parte* Hunnicutt, 123 Pac. 119; Richardson v. El. & P. Co., 118 Pac. 985; Ins. Co. v. Hattabaugh, 123 Pac. 82; Broomfield v. Holland, 114 Pac. 891; State v. Long, 117 Pac. 104; Schaake v. Dolley, 118 Pac. 80, 84; Est. of Chadbourne, 114 Pac. 1014;. People v. Earl, 124 Pac. 183; State v. Hamilton, 111 Pac. 1027; State v. Radford, 109 Pac. 284; Uxell v. Lunney, 104 Pac. 949; Burton v. U. P. Coal Co., (Wyo.) 107 Pac. 397; Young v. Regents &c., 124 Pac. 156). It must not be presumed that the Legislature intended an unreasonable result· or one violative of the Constitution. (State v. Hooker, 109 Pac. 448; Comm'rs. v. Woods, (Wyo.) 107 Pac. 754; State v. Duis, 116 N. W. 751). Every citizen is charged with notice of the taking effect of all laws. The statute in question was notice of the change to occur when the act should take effect. (State v. Ry. Co., 212 Mo. 658, 111 S. W. 500; State v. Ry. Co., 136 Wis. 407, 117 N. W. 686).

*Loren E. Winslow,* for defendant in error.

The act of 1911 changing the classification of counties for the purpose of fixing the compensation of county officers did not take effect or go in force until December 31, 1912, and therefore it was not a law until that time, but until then, it was a nullity. (26 Ency. Law, 565; 36 Cyc. 1191; Bishop's Stat. Cr. Sec. 31; McArthur v. Franklin, 16 O. St. 193; Larrabee v. Talbott, 5 Gill, (Md.) 426, 46 Am. Dec. 637; Santa Cruz Water Co. v. Kron, 74 Cal. 222, 15 Pac. 772; Harrison v. Colgan, 148 Cal. 69, 82 Pac. ·674; State v. Ry. Co., 36 Mont. 582, 93 Pac. 945; Ely v. Holton, 15 N. Y. 595; Kelsey v. Kendall, 48 Vt. 24; Rice v. Ruddiman, 10 Mich. 125). It was then inoperative as to the salary of the defendant in error or county officers elected or appointed before that day, because of the consti-

tutional provision that no law shall increase or diminish the salary of a public officer after his election or appointment. (Comm'rs. v. Burns, 3 Wyo. 691; State *ex rel.* v. Burdick, 4 Wyo. 272; Davis v. Comm'rs. 4 Wyo. 477; Guthrie v. Comm'rs., 7 Wyo. 95; Comm'rs. v. Mulholland, 136 Pac. 112; Harrison v. Colgan, *supra;* Woods v. Potter, 95 Pac. 1125; Smith v. Mathews, 103 Pac. 199; McNew v. Nichols Co., (Ky.) 100 S. W. 324; James v. Barry, 128 S. W. 1070; Comm'rs. v. Henry, (Okl.) 126 Pac. 761). There was no change in the assessed valuation that caused the supposed change in the salary, but if any change was made in the salary it was the result of a law which took effect after the election, and is to be construed as though it was enacted on the day that it took effect. The argument by opposing counsel with reference to the ability of the county to pay salaries entering into the theory of the constitutional provision respecting limitations upon salaries is beside the question and inapplicable in any discussion of the statute here involved.

SCOTT, CHIEF JUSTICE.

The parties to this action were respectively plaintiffs and defendant in the court below, and will be so referred to here. The plaintiffs were taxpayers and brought this action in the county for and on behalf of all the taxpayers of said county in the District Court of Fremont County to recover from the defendant for excess in salary as County and Prosecuting Attorney, charged, allowed and received by him as it is alleged contrary to the statute fixing his salary. It is admitted that the defendant was elected to that office at the general election held November 5, 1912, and qualified as such officer on January 6, 1913, and that plaintiff claimed and was drawing from the county as compensation for his services the sum of $125 per month, and had drawn such sum for the months of January, February, March and April prior to the time of the commencement of this action. It is alleged in the petition that the

county became and was a county of the second class from and after December 31, 1912, under and by virtue of the amount of the assessed valuation of said county and the provision of law of the State.   It is alleged in the answer and denied in the reply that the last assessment roll of said county made and returned before defendant's election shows the assessed valuation of said county to be the sum of $10,286,368.82, and it is claimed that upon such assessment the County of Fremont was under the law in force at the time of his election a county of the first class, and that for that reason defendant was entitled under the law to charge and receive as salary for his services the sum of $1500 per year, or $125 per month; that being the salary allowed by law in counties of the first class under the classification provided by Section 1070, Comp. Stat., at the time of such election.

The case was tried to the court without the intervention of a jury, and the court found and gave judgment for the defendant.   The plaintiffs bring error.

Upon the trial of the case the plaintiff proved the assessed valuation of the County for 1912 to be $10,284,-368.82.   The various counties of the State were and are divided into classes for the purpose of fixing the compensation and fees to be paid to and charged by county and precinct officers.   Sec. 1070, Comp. Stat. 1910, reads as follows: "For the purpose of fixing the compensation to be paid to and the fees to be charged by county and precinct officers, the counties of the State are classified as follows:

1.   Counties having an assessed valuation of more than five million dollars, shall be counties of the first class.

2.   Counties having an assessed valuation of more than two million and five hundred thousand dollars and not exceeding five million dollars, shall be counties of the second class.

3.   Counties having an assessed valuation of more than one million and four hundred thousand dollars and not ex-

ceeding two million and five hundred thousand dollars, shall be counties of the third class.

4. Counties having an assessed valuation of less than one million and four hundred thousand dollars, shall be counties of the fourth class." The section was amended and re-enacted by Chap. 38, S. L. 1911, being "An Act to amend and re-enact Section 1070 of Chapter 85, Wyoming Compiled Statutes of 1910, relating to classification of counties. Be it enacted by the Legislature of the State of Wyoming:

"Section 1. That Section 1070 of Chapter 85, Wyoming Compiled Statutes of 1910, be, and the same is hereby amended and re-enacted so as to read as follows:

"Sec. 1070. Classification of Counties. For the purpose of fixing the compensation to be paid to and the fees to be charged by county and precinct officers, the counties of the State are classified as follows:

"1. Counties having an assessed valuation of more than twelve million dollars, shall be counties of the first class.

"2. Counties having an assessed valuation of more than six million dollars and not exceeding twelve million dollars shall be counties of the second class.

"3. Counties having an assessed valuation of six million dollars, or less, shall be counties of the third class.

"Section 2. This act shall take effect and be in force from and after December 31, 1912.

"Approved February 17, 1911."

The last amendatory act did not become operative or supersede Section 1070, *supra*, until December 31, 1912. It may be conceded that while Section 1070 was operative and in force the assessed valuation of Fremont County at the time of such election and for some years prior thereto gave it rank as a county of the first class. It is provided by Section 1150 that "The assessed valuation of a county for purposes of classification for compensation of its officers shall be ascertained by a reference to the assessment last made before the election or appointment of the county

officer affected thereby." Section 1206 provides as follows: "County and Prosecuting Attorneys shall receive the following annual salaries: In counties of the first class, fifteen hundred dollars; in counties of the second class, twelve hundred dollars; in counties of the third class, eight hundred dollars; in counties of the fourth class, six hundred dollars."

Section 1070 was in force before the amendment (Chap. 38, 1911) which became operative on and after December 31, 1912. Prior to that date it was inoperative, of no force and effect and not notice to any one. It is said in A. & E. Ency. Law, Vol. 26, p. 565: "A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of passage. Thus, the words 'heretofore', 'hereafter' and the like, have reference to the time the statute becomes effective as a law, and not to the time of passage. Before that time no rights may be acquired under it, and no one is bound to regulate his conduct according to its terms; it is equivalent to a legislative declaration that the statute shall have no effect until the designated day." It is also said in Cyc., Vol. 36, at page 1191, as follows: "Until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the Legislature and approved by the Executive has no force whatever for any purpose, and all acts purported to have been done under it prior to that time are void." Mr. Bishop lays down the general rule in the following language: "A statute which is to become a law at a future date is a nullity in the meantime, and does not even operate as notice to persons to be affected by it, nor does a repealing clause in it put an end to the law to be repealed." (Bishop, Stat. Crimes, Sec. 31, p. 29). The rule thus stated has been uniformly upheld by the courts and indeed no other rule would be applicable and at the same time carry out the intention of the Legislature where, as in the amendatory act under consideration, that body expressly declared that the

act should not take effect until December 31, 1912. It was as though the Legislature was in session on the day the act took effect and passed the law on that day (Rice v. Ruddiman, 10 Mich. 125) and would only regulate the salaries of county officers elected or appointed after such act went into effect. Sec. 32 of Art. III of the Constitution is as follows: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment; but this shall not be construed to forbid the Legislature from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, if such salaries or emoluments are not fixed by its provisions." The meaning of this section is clear. There is no ambiguity about it. The words are pointed and direct. They mean just what they say and construe themselves. When it says that the salary of a public officer shall not be increased or diminished after his election it means that the salary or compensation for the term to which he was elected shall not be changed after, but becomes fixed as of the date of the election, although such officer is not inducted into office until the first Monday of January, immediately following such election. (Sec. 1136, Comp. Stat. 1910). This view is borne out by the decision in Burns v. Commissioners, 3 Wyo. 691, 700, 29 Pac. 894, 898, where this court in speaking of this section says: "In the interval between the election or appointment of the public officer and his qualification and induction into office there can be no change in the compensation as well as during the official term." This judicial interpretation has been followed by this court in State ex rel. Henderson v. Burdick, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; Davis v. Commissioners, 4 Wyo. 477, 482, 35 Pac. 467; Guthrie v. Commissioners, 7 Wyo. 95, 50 Pac. 229; Commissioners v. Mulholland, (Decided Nov. 10, 1913) 136 Pac. 112. We think the meaning of the section has been settled by the

foregoing cases, and for that reason it need not be further discussed.

It is here conceded that on November 5, 1912, that being the day on which defendant was elected, the assessed valuation of Fremont County, as determined from the assessment roll theretofore and for that year made and returned by the assessor of the county, was $10,284,368.82. That was the basis for the classification of the county for the purpose of fixing the salary of the county officers then elected for the next ensuing term. As the assessed valuation exceeded $5,000,000, the county was a first-class county at the time of defendant's election under the provisions of Section 1070, *supra,* which section was and continued in force until superseded by the amendment. The latter was not retroactive. It provided for a new classification of the counties thereafter for the purpose of fixing the salaries of the county officials—not to change the amount of such salaries as had already been fixed by law. The question as to the amount of defendant's salary was fixed before the amendment which went into effect after the election and before his induction into the office. To compute the defendant's salary under the provisions of the amendment would be to disregard the express provisions of the section of the constitution as to the date when the salary should be fixed and overrule the decisions heretofore made and followed by this court. But further, the defendant is not here seeking to overthrow the provisions of the amendatory act but to sustain it in all its parts while the plaintiffs are here asking us to in effect rewrite Section 2 of the Act so as to give it a meaning in violation of its plain and unambiguous language. We are content to follow those decisions which state what we deem to be the correct rule, for any other would disregard the provision of the constitution. We cannot read into that instrument words which import a different meaning from those appearing therein, and to sustain plaintiffs' contention it would be necessary to disregard and render nugatory an express in-

hibition contained therein. The defendant's salary or com-
pensation as County and Prosecuting Attorney of Fremont
County was fixed at the time of his election in 1912, as de-
termined by the law in force at that time. It follows that
the judgment of the lower court was correct and the same
will be affirmed.                                    *Affirmed.*

. BEARD, J., concurs.

., POTTER, J., did not sit.

#### ON PETITION FOR REHEARING.

. BEARD, JUSTICE. ·

Counsel for plaintiffs in error has filed a petition for a
rehearing in this case, the opinion having been handed down
February 3, 1914, and appearing in 138 Pac. 184. It was
argued at great length in the original brief filed in the case
and is re-argued in the brief in support of the petition for
rehearing that the court erred in its construction of the Act
of February 17, 1911, in holding that it did not apply to
officers elected at the general election in November, 1912.
It is insisted that it was the intention of the Legislature to
make the change applicable to those officers although the
Act was not to take effect until December 31, 1912, after
such election; that the act could not have taken effect at
any other time or upon its passage. In that respect we dif-
fer from counsel. The act could have become the law at
once governing the salaries of officers elected thereafter,
and the Legislature must be presumed to have known that
it would not affect the salaries of those then in office or
who had been elected prior to the taking effect of the act,
during the term for which they had been elected. Or it
could have been said that the act should not affect the sal-
aries of such officers during such terms. It is insisted by
·counsel that the only reason for postponing the taking ef-
fect of the act until December 31, 1912, was to have it
occur at the end of the terms of those then in office. But we
take judicial notice that at the same session of the 1911
Legislature and prior to the act of Feb'y. 17, it created

six new counties in the State, and if they proceeded at once under the law to organize, their county officers, including an Assessor, could not be elected until the general election in November, 1912, and the first separate assessment of both the new and the parent counties would be made in 1913 after the officers in both the old and the new counties had been elected; and until such assessment, the class to which either would belong could not be officially ascertained without at least great difficulty, so that there appears to have been a substantial reason for postponing the taking effect of the act. But whether or not that was the reason or what the reason therefor may have been, the Legislature in plain and positive terms did postpone the taking effect of the act until December 31, 1912. A rehearing is denied.                         *Rehearing denied.*

SCOTT, C. J., and POTTER, J., concur.