[No. 2887. Jan. 4, 1924.]

STATE ex rel. GILBERT et al. v. BOARD OF COM'RS OF SIERRA COUNTY.

SYLLABUS BY THE COURT

1. Section 27 of article 4 of the Constitution prohibits increasing or diminishing the compensation of an officer during his term of office.

2. This prohibition applies to officers who have a definite and fixed tenure of office, and does not embrace or include those who hold their offices at the pleasure of and subject to removal by the appointing power.

3. The constitutional inhibition in question applies to all officers who hold public offices, regardless of whether such offices were created by the Constitution or the Legislature.

4. Section 2 of chapter 49, Laws of 1923, which provides that within 30 days after such act takes effect, the state auditor shall classify the several counties of the state, using therefor the assessed valuation of such counties as finally fixed for the year 1922, and that such classification shall determine the salaries of the several county officers during the years 1923 and 1924, is void as to such officers then serving, where it results in either increasing or diminishing their compensation during their term of office.

Appeal from District Court, Sierra County; H. P. Owen, Judge.

Mandamus by the State, on the relation of Ernest Gilbert and others, against the Board of County Commissioners of Sierra County, to compel defendant to pay relators' salaries on basis of fourth class county instead of fifth class. From a judgment for plaintiffs, defendant appeals. Affirmed.

M. J. Helmick, Atty. Gen., John W. Armstrong, Asst. Atty. Gen., and J. O. Seth, of Santa Fe, for appellant.

Edward D. Tittman, of El Paso, Tex., for appellees.

Hall & McGhee, of Clovis, amici curiæ.

OPINION OF THE COURT

BRATTON, J. The relators are respectively county clerk, assessor, and treasurer of Sierra county. They were elected to their respective offices at the general election held throughout the state in November, 1922, for a term of two years, beginning January 1, 1923. At the time they were elected, as well as at the time they qualified, Sierra county was in the fourth class. Thereafter, the state auditor reclassified the several counties of the state, and Sierra county was placed in the fifth class, which resulted in reducing the salaries of the county officers of that county. Following such re-

classification, this suit was instituted in mandamus to compel the respondent, the board of county commissioners of said county, to pay to the relators their respective salaries upon the basis of a fourth class county instead of one in the fifth class. The authority of the state auditor to so classify the county and thereby reduce the compensation due the relators during their term of office is the sole question involved in the case.

[1] Perhaps an historical review of the constitutional and statutory provisions governing this question will aid in better understanding our conclusion. Section 1 of article 10 of the Constitution provides that the Legislature, at its first session after statehood, shall classify the counties and fix the salaries of all county officers, and that the salaries so fixed shall apply to all those elected at the first election held under the Constitution. Such provision is in this language:

"The Legislature shall at its first session classify the counties and fix salaries for all county officers, which shall also apply to those elected at the first election under this Constitution. And no county officer shall receive to his own use any fees or emoluments other than the annual salary provided by law, and all fees earned by any officer shall be by him collected and paid into the treasury of the county."

Pursuant to such constitutional provision, the Legislature enacted chapter 12, Laws 1915, which classified the several counties by dividing them into five classes, numbered from 1 to 5, inclusive, such division depending upon the full assessed valuation of such counties for the year 1914; those of the highest valuation being in the first class and those of the lowest being in the fifth class. By section 2 of the act, the salaries of the several county officers in the several classes were fixed upon a scale, the highest being those of the first class and diminishing as the classification of the counties is lowered, with the result that officers in counties of the fourth class receive larger salaries than those in counties of the fifth class. By section 19 of the act, it is pro-

212    SUPREME COURT OF NEW MEXICO

State ex rel. Gilbert et al. v. Bd. Com. Sierra Co., 29 N. M. 209

vided that within 30 days after January 1, 1917, and within 30 days after the 1st day of January of each fourth year thereafter, the state auditor shall classify the counties, using therefor the assessed valuation as finally fixed for the preceding year, and that such classification, when so · fixed and determined, shall govern the salaries of the county officers for four years thereafter. This section of the statute so provides in this language:

"From and after the first day of January, 1917, the classification of counties shall be fixed and governed by the assessed valuation as finally fixed for the preceding calendar year. Provided: Within thirty days after said first day of January, 1917, and within thirty days from the first day of January of each fourth year thereafter, such classification shall be determined by the State Auditor from the assessed valuation of each county as finally fixed for the preceding year, and the state auditor upon making such determination shall notify the board of county commissioners of each county of the class within each of the counties of this state falls according to such classification, and the classification as so fixed and determined by the state auditor shall govern the salaries of county officers for four years thereafter."

Following the terms of this act, the state auditor classified the counties during January, 1921, and placed Sierra county in the fourth class. This was the status at the time the relators were elected and qualified to their respective offices. Thereafter chapter 49, Laws of 1923, was enacted, which was approved on March 7, 1923, and carried the emergency clause and, consequently, became effective on that date. This act provides in the first section thereof that within 30 days after January 1, 1925, and within 30 days after the 1st day of January of each second year thereafter, the state auditor shall classify the several counties, based upon the assessed valuation, as finally fixed for the preceding year, and that the classification, when so fixed and determined, shall govern the salaries of the county officers for two years thereafter, thus changing the period of classifying or reclassifying the counties to each two years instead of four as it had previously been. By section 2 of this act, it is further

provided that within 30 days after it became effective,
the auditor shall classify the counties for the years
1923 and 1924, using therefor the assessed valuation
of said counties for the year 1922, and that such class-
ification shall determine the salaries of the several
county officers for the years 1923 and 1924. It was
under the terms of this section that the state auditor
classified the counties during the year 1923 and re-
duced Sierra county from the fourth to the fifth class.
This classification was fully pleaded by the respond-
ents in defense to the application of the relators for
the writ of mandamus. The trial court sustained a
demurrer to the facts so pleaded and held that such
part of the act in question is void, because it results
in diminishing or reducing the compensation of the
relators during their term of office in violation of sec-
tion 27 of article 4 of the Constitution, which expressly
prohibits the compensation of any officer being in-
creased or diminished during his term of office. This
provision is as follows:

"No law shall be enacted giving any extra compensation to
any public officer, servant, agent or contractor after services
are rendered or contract made; nor shall the compensation of
any officer be increased or diminished during his term of of-
fice, except as otherwise provided in this Constitution."

We are impressed with the soundness of this con-
tention. The constitutional provision in question is
plain and emphatic; the words used are apt, direct,
and construe themselves. It positively forbids increas-
ing or diminishing the compensation of any officer
during his term of office. Prior to the adoption of
the Constitution, county officers had been compen-
sated for their services upon a fee basis, and it was
evidently intended by the two constitutional provisions
hereinbefore quoted (section 1, art. 10, and section 27,
art. 4) to dispense with such method and to substi-
tute in lieu thereof a salary method, with the provi-
sion that such compensation should be neither increased
nor diminished during the term of any such officer.

And the considerations which doubtless entered into and prompted the inclusion of such a provision of the Constitution are obvious. It was designed to protect the individual officer against legislative oppression which might flow from party rancor, personal spleen, enmity, or grudge. These could well harass and cripple the officer by reducing his compensation during his service; while, on the other hand, party feeling, blood, or business relations might be combined in such pernicious activity in the form of strong and powerful lobbying as to sway the members of the Legislature and cause the bestowal of an unmerited increase. To obviate these conditions is the purpose of this wise constitutional provision.

[2] A provision identical, or quite similar, to this, is to be found in the Constitution of most of the states. They seem to be quite common and to have been frequently construed by the courts. It has been many times held that such a provision does not apply to an office held during the pleasure of and subject to removal of the appointing power, such as employees, attaches, deputies, court stenographers, and others similarly situated. This is due to the fact that such persons have no "term of office" within the intendment of such constitutional provision. To come within its terms an officer must have a fixed and definite tenure of office. Bowers v. City of Albuquerque, 27 N. M. 291, 200 Pac. 421; State ex rel. Rumbold v. Gordon, 238 Mo. 168, 142 S. W. 315, Ann. Cas. 1913A, 312; Commonwealth v. Ewald Iron Co. et al., 153 Ky. 116, 154 S. W. 931; Harrold v. Barnum, 8 Cal. App. 21, 96 Pac. 104; Baylet v. Garrison (Cal. Sup.) 214 Pac. 871; Board of Commissioners of Muskogee County v. Hart, 290 Okl. 693, 119, Pac. 132, 37 L.R.A.(N.S.)388; Board of Commissioners v. Henry et al., 33 Okl. 210, 126 Pac. 761; State ex rel. Matlock v. Oklahoma City, 38 Okl. 349, 134 Pac. 58; Stone v. State ex rel. Strain, 18 Ala. App. 228, 89 South. 824; Quernheim v. Asselmeier, 296

Ill. 494, 129 N. E. 828; Hibbard v. Suffolk County, 163 Mass. 34, 39 N. E. 285.

In many cases the constitutional inhibition has been applied and enforced with respect to many different kinds and classes of officers without regard to whether the offices so held were created by constitutional or statutory provision. In such cases no discussion of the distinction between the two kinds of officers is to be found. Johns et al, v. Louthan, 35 Okl. 407, 130 Pac. 139; Morgan County v. Fidelity & Deposit Co., 200 Ala. 690, 77 South. 233; Fox. v. Lantrip et al., 169 Ky. 759, 185 S. W. 136; Anderson v. Burton, 174 Ky. 456, 192 S. W. 519; Neutzel v. Fiscal Court of Jefferson County, 183 Ky. 1, 208 S. W. 11; Phillips v. Broach, 186 Ky. 138, 216 S. W. 80; Owen County Board of Education v. Kemper, 197 Ky. 407, 247 S. W. 25; State ex rel. Truman v. Jost et al., 269 Mo. 248, 191 S. W. 38.

With these cases which deal for the subject in general terms disposed of, we approach a consideration of the narrow question which counsel have presented. It is suggested by the appellants that some courts hold such inhibition applies to the officers created or expressly recognized by the Constitution, and does not relate to nor embrace those which are created by the Legislature. It is not contended that such should be the construction given the Constitution, but that distinction is suggested, and the decisions so holding have been brought forward and presented to us. This exact question has been decided in a very few instances, and the decisions dealing with it are very few. The foundation case upon which the later cases so holding are based is Board of Supervisors v. Hackett et al., 21 Wis. 620. In that case it was held that the word "compensation," as used in the Constitution of that state, referred to and meant those officers who received a fixed salary, payable from the public treasury of the state to the exclusion of that class of officers, such as

sheriffs, constables, clerks of courts, and others, who were compensated for their services upon a fee basis. This is as far as the court went in that case. It never held, either expressly or impliedly, that the inhibition applied to constitutional officers only, and we suggest that in this state many officers whose offices are created by the Legislature are paid from the public treasury. This case was followed in the later cases from the Supreme Court of Wisconsin, in which salaried officers were involved. In such later cases, it was held that the constitutional provision applied to state officers proper, excluding county and municipal officers. Rooney v. Supervisors, 40 Wis. 23; State v. Kalb, 50 Wis. 178, 6 N. W. 557; State v. Erickson, 120 Wis. 435, 98 N. W. 253. In State v. Outagamie County Board, 175 Wis. 253, 185 N. W. 184, it was said that such constitutional provision did not apply to the office of judge of the special municipal court, since that was not a constitutional office. In that case the former decisions of that state were cited as authority, none of which attempted to decide that exact question, and we think a careful reading of the opinion discloses that the court did not intend to make such a distinction, but rather intended to follow its former decision which applied the general inhibition to state officers proper who receive their compensation from the public treasury of the state to the exclusion of county and municipal officers.

It has been twice held in Nebraska that such a constitutional provision applies to constitutional officers only. Douglas County v. Timme, 32 Neb. 272, 49 N. W. 266; State v. Moores, 61 Neb. 9, 84 N. W. 399. The former of these cases cites as authority State v. Kalb, supra, which, as we have previously demonstrated, did not so hold, but rather that such officers as were paid from the public treasury alone are included. In the latter of these cases, the Supreme Court of Nebraska merely cites its former decision. The only other case coming to our knowledge which

has followed any of the cases we have cited and discussed is State v. Grimes, 7 Wash. 445, 35 Pac. 361, wherein it was held that an act of the Legislature which changed the fees to be paid to justices of the peace and constables might be applied to the then incumbents of such offices, with the result that their compensation might be changed during the term of office. That court cites as its authority Board of Supervisors v. Hackett, supra. It did not, however, discuss any distinction between constitutional and statutory officers, but sought to distinguish between those who are remunerated upon a fee basis from those whose compensation is paid by a fixed salary. In none of the foregoing cases is any logical or satisfactory process of reasoning resorted to in order to support the conclusion. The foundation case simply concluded, without reason or authority, that such officers only as are paid from the public treasury are included within the inhibition, and the cases which followed merely cite the earlier case and give no more satisfactory reason or logic. On the other hand, it has been held in many cases decided by the Supreme Court of Pennsylvania that such an inhibition applies to officers holding offices created by the Legislature as well as those created by the Constitution, and that no distinction should be made in applying the rule as between the two classes. Lancaster County v. Fulton, 128 Pa. 48, 18 Atl. 384, 5 L. R. A. 436; Richie v. City of Philadelphia, 225 Pa. 511, 74 Atl. 430, 26 L. R. A. (N. S.) 289; Commonwealth ex rel. Wolfe et al. v. Moffitt, 238 Pa. 255, 86 Atl. 75, Ann. Cas. 1914C, 211; In re Tucker's Appeal, 271 Pa. 462, 114 Atl. 626. In Commonwealth v. Moffitt, supra, it is said:

"It is settled by many decisions of this court that the prohibition against the extension of the term of a public officer or the increase or diminution of his salary after his election or appointment, contained in section 13, article III, is not limited to constitutional offices. Whether an officer is a 'public officer' within the intendment of the constitutional prohibition depends upon the manner of his selection, the duties imposed and the powers conferred upon him. If he is

chosen by the electorate for a definite and certain tenure in the manner provided by law to an office whose duties affect and are to be exercised for the benefit of the public for a stipulated compensation paid out of the public treasury, it is quite safe to say that the incumbent is a public officer within the meaning of the constitutional provision in question.''

[**3**] With the reasoning and conclusion reached by the Pennsylvania court we fully agree, as we think a person who is elected to a public office for a fixed and definite term, whose functions and duties affect the public, is an officer within the intendment and meaning of the constitutional provision in question, without regard to whether the office is one created by the Constitution or by the Legislature.  Certainly the duties and functions of the. respective offices held by the relators. possess functions and duties which affect the public. We think our conclusion is strengthened by the broad language used in the Constitution.  It expressly provides in clear and unmistakable language that the compensation of ''any officer'' shall be neither increased nor decreased during his term of office, and there is nothing in such language which indicates that any narrow or limited use of the term was intended, nor that any distinction between the two classes of officers was contemplated.  It promulgates a uniform rule applicable to the four corners of the state touching and affecting all officers alike, whether their respective officers were created by the Constitution or the Legislature.  This we think is the plain, clear, and sensible construction which the provision demands.  The evil effects which might be suffered from the lack of such an inhibition, or the beneficial results to be derived from its existence, apply with equal force to statutory officers as to constitutional ones.  We can appreciate no good purpose which was intended to be served by making such a rule applicable to the one class and not to the other.  Combined pernicious activity on the part of statutory officers should be prohibited for the same reasons that they should be on the part of constitutional officers.  On the other

JANUARY TERM, 1923. 219

Lake Arthur Drain. Dist. v. Bd. Com. Chav. Co. 29 N. M. 219

hand, statutory officers should be protected from interference by way of retaliation or revenge from members of the Legislature as well as constitutional officers should be, as the public would suffer from such sinister influences when exercised upon the one class as much as the other.

And upon precedent and reason it appears that no distinction should be made between a law which, by its express terms, proposes to increase or diminish such compensation during the term of an officer, and one which furnishes a standard by which such result may be obtained. They equally violate the constitutional provision in question. Board of Commissioners v. Burns, 3 Wyo. 691, 29 Pac. 894, 30 Pac. 415; Guthrie v. Board of Commissioners 7 Wyo. 95, 50 Pac. 229; Nickerson et al. v. Winslow, 22 Wyo. 259, 138 Pac. 184, 140 Pac. 834.

[4] For these reasons, we are led to the conclusion that the lower court correctly held section 2 of chapter 49, Laws of 1923, supra, to be unconstitutional and void in so far as it operates to increase or diminish the compensation of the relators in this case. The remaining portions of the act are not questioned, as they do not meet with the constitutional objection we have discussed.

For the reasons stated, the judgment of the trial court should be affirmed, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.