JOSEPH H. BARBER, ROY E. BRIGGS, FRANK L. NARRAMORE, VINCENT A. VEHAR, VALERIE M. LEWIS, JENNY M. ISHERWOOD, and MERLIN E. ROLLINS,

*Plaintiffs,*

vs.

THE BOARD OF COUNTY COMMISSIONERS OF UINTA COUNTY, STATE OF WYOMING,

*Defendant.*

(No. 2661; December 28th, 1954; 277 Pac. (2d) 977)

For the plaintiffs the cause was submitted on the brief and also oral argument of Fred E. Burdett of Evanston, Wyoming.

For the defendant the cause was submitted on the brief of Harry L. Harris of Evanston, Wyoming.

# OPINION

BLUME, Chief Justice.

This case is here on reserved constitutional questions. The action was brought on February 19, 1954, by certain county officials of Uinta county in this state, who were elected in 1950, against the board of county commissioners, complaining that they have not been paid enough salary during their term of office by reason of the fact that the board of county commissioners wrongfully kept the county as a county of the second class, whereas the county was in fact, and would have been made, a county of the first class if the commissioners had done their duty. Section 27-301, Wyoming Compiled Statutes, 1945, provides that counties having an assessed valuation of twenty million dollars shall be counties of the first class; that counties having an assessed valuation of ten million dollars but less than twenty million dollars shall be counties of the second class. The next section provides the salaries that shall be paid to officials of these counties, fixing the amount to be paid to those of counties of the first class considerably higher than the salaries to be paid to officials of counties of the second class. Section 27-306 W.C.S. 1945, as it stood in 1950, provided that: "The assessed valuation of a county for purposes of this act shall be ascertained by a reference to the assessment last made before the election or appointment of the county officer affected thereby." The legislature in 1953 added to that section the following clause, namely: "Provided, however, that when any District Court of this State shall determine that by reason of design, neglect, or default of a County Assessor, County commissioners, or other such officers that such assessment does not fairly represent the valuation of a County for such year then the assessment made in the year next following shall con-

trol for the purpose of this Act." This clause will hereafter be referred to as the 1953 amendment.

The plaintiffs alleged in their petition that the board of county commissioners in 1950 by design, refusal and neglect failed to put, or cause to be put, all assessable property in the county on the assessment roll so that the assessed value of the property in the county remained below twenty million dollars in value, but that it should have been above that sum and that the assessed value for 1951 was more than that sum. They asked the court to determine that the assessed value of 1950 was unfair and that they be paid compensation based on the assessed value of 1951.

By an agreed statement of facts it appears that the board of county commissioners of Uinta county did not properly assess all the property in that county in 1950; that the assessment roll in that county for 1950 was the sum of $19,692,039 while the assessment roll in 1951 was $20,767,171 and was still greater in 1952; that the lower assessment roll in 1950 came about by reason of the fact that the county commissioners failed to furnish enough money to the assessor of that county to carry out the so called Boekh system which the legislature had directed to be followed, so that property in the county that should have been included in the assessment roll was in fact not included; that moreover the board failed to assess new construction of the Mountain Fuel Supply Company, and if that new construction had been assessed, the assessment roll for 1950 would have been increased in the sum of $274,614.

The court found that the board of county commissioners of Uinta county in 1950 failed and refused to assess the newly constructed plant of the Mountain Fuel Supply Company and failed and refused to provide funds to view and count cattle and sheep in the

county, that because of the default, neglect or design of the defendant board, the purported assessment for 1950 does not fairly represent the valuation in the county for that year. Thereupon the trial court submitted to this court for answer the following constitutional questions, namely:

"Where a District Court has determined that by reason of the design, neglect or default of County Commissioners or other such officers, an assessed valuation has been set which does not fairly reflect the valuation of such county for such year and upon which such county officers' salaries have been based, would use of the assessed valuation of the said county in the year next subsequent to their election and qualification in the computation and determination of salaries of such county officers, which would result in payment to said county officers of a salary different from that based upon a standard which does not fairly represent the valuation of such county for such year, be violative of Section 32, Article 3 of the Constitution of the State of Wyoming?

"Where a District Court has determined that by reason of the design, neglect or default of County Commissioners or other such officers, an assessed valuation has been set which does not fairly represent the valuation of such county for such year and upon which such county officers' salaries have been based, would use of the assessed valuation of the said county in the year next subsequent to their election and qualification in the computation and determination of salaries of such county officers, which would result in payment to said county officers of a salary different from that based upon a standard which does not fairly represent the valuation of such county for such year be violative of Section 1, Article 14 of the Constitution of the State of Wyoming?"

Article 3, Section 32, of our constitution provides as follows:

"Except as otherwise provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his

election or appointment; but this shall not be construed to forbid the legislature from fixing salaries or emoluments of those officers first elected or appointed under this constitution, if such salaries or emoluments are not fixed by its provisions."

Article 14, Section 1, of our constitution provides as follows:

"All state, city, county, town and school officers, (excepting justices of the peace and constables in precincts having less than fifteen hundred population, and excepting court commissioners, boards of arbitration and notaries public) shall be paid fixed and definite salaries. The legislature shall, from time to time, fix the amount of such salaries as are not already fixed by this constitution, which shall in all cases be in proportion to the value of the services rendered and the duty performed."

It may not be amiss to mention briefly the manner in which the assessment roll of a county is made up. The property in the county is listed as of the first day of February of each year. § 32-501, W.C.S. 1945. The board of county commissioners, sitting as a board of equalization, meets in May and June to equalize the various assessments made. § 32-801, W.C.S. 1945. They may deduct and add property that has been omitted. §§ 32-303, 32-403. An abstract of the assessment roll is to be made up on or before the first Monday in July of each year. § 32-511. The State Board of Equalization has general supervision of the assessments that are made in the various counties and may add or deduct from the assessments made on or before the first Monday in August of each year. § 32-711. The same section gives it power to bring proceedings to correct any omission from the assessment roll or in case property has been improperly or unequally assessed. Stated generally, it may be said that the assessment roll is ordinarily complete on or about the first day of September of each year.

Counsel for plaintiffs argues that the basis for salaries should be a basis that is true and correct and that plaintiffs should have relief herein independent of the 1953 amendment here involved. He cites some cases from Washington and other states relating to a basis based on the population and which will be determined by the court. The case before us, however, is one on reserved constitutional questions only involving the 1953 amendment, so that the point before these courts is not before us, and is left undecided.

This court has considered the constitutional provisions here in question several times: Board of Commissioners of Converse County v. Burns, 3 Wyo. 691, 29 P. 894, 30 P. 415; Guthrie v. Board of Commissioners of Converse County, 7 Wyo. 95, 50 P. 229; Board of Commissioners v. Mulholland, 22 Wyo. 130, 136 P. 112; Nickerson v. Winslow, 22 Wyo. 259, 138 P. 184, 140 P. 834. The recent case of Blackburn v. Board of County Commissioners, 67 Wyo. 494, 226 P. 2d. 784, reviews the subject at length. All of these cases hold that there can be no change in the compensation of county officials after their election or appointment, and that if the assessed value of the county is increased or decreased thereafter, so as to place the county in a different class, yet the compensation cannot be changed by reason of that fact. The Nickerson and Blackburn cases involve an increase in compensation made by the legislature during the term of office or after the election of the officials involved. The Burns and Guthrie cases involve an increase, and the Mulholland case involved a decrease in the assessed valuation during the term. The principle involved is the same.

Counsel for plaintiff argues that the 1953 amendment heretofore mentioned is not violative of either of these constitutional provisions here involved. He contends—somewhat abbreviating his statements—that

(1) "'The assessed valuation of a county standing alone is an ultimate and extraneous fact, compelling by operation of law, the use of a standard fixed prior to the election of these officers, and not a law increasing or diminishing the salary or emolument of a public officer after his election." (2) He contends that the amendment merely fixes and stabilizes salaries of county officers, where the true standard has not been attained by the arbitrary, purposeful or negligent conduct of the board of county commissioners and that the action of the court merely directs use of an unimpeached standard for fixing salaries; that the court has power to determine what the assessed valuation of the county might have been at any given time; that the determination thereof is not in the exclusive jurisdiction of administrative officers.

We are not certain that we understand the first point mentioned by counsel. Judging from his elaboration thereof, he seems to mean that this court has been wrong in its former decisions when it held that the salary of county officials cannot be increased or diminished after they are elected or appointed, although after that time the assessed valuation of the county has so changed as to bring the county into a class different from that which existed at the time when the officials were elected or appointed. The matter has been so thoroughly considered and discussed in our former decisions that no good purpose would be subserved in discussing it again. The point is stare decisis.

Neither do we see any great amount of force in the remaining contentions of counsel for plaintiffs in so far as they bear upon the proper solution of the question before us. It is true, of course, that a court may at times inquire as to what the assessed valuation of a county may have been at a given time. An official

might sue for salary which has been refused him .In such case inquiry into the assessed valuation when he entered upon his duties would be proper. But that does not help us. Courts have no inherent power to fix and determine what the assessed valuation shall be. That is ordinarily a matter for administrative officers. Courts, it seems, might be given such power by the legislature. 61 C.J. 834. But that has not been done in this state. The only power given the district court by the 1953 amendment in question is to find as to whether or not the assessed value was fair in a particular case. If it finds to the contrary, then the assessment of the following year governs as a basis in fixing the salaries to be paid. The court does not fix the latter. It may be as unfair as that of the previous year or even more so. In such a case, it might well happen that injury would be heaped upon injury, unless that assessed valuation, too, might be attacked, and thus lead to interminable litigation.

In view of the previous decisions of this court, the solution of the question before us is comparatively easy. The simple facts are these: When county officials are elected or enter upon their duties there should be a definite basis according to which their salary is fixed. It should not be left to surmise or conjecture. The board of county commissioners should know what they must pay and the officials are entitled to know what they will receive. Such a basis has been furnished by the constitution and by the legislature, namely the assessed valuation as fixed by the administrative agencies previous to the election or appointment of the officials. And we might say parenthetically that generally speaking, in view of our statutes, the basis cannot be considered to be too unfair. In any event, it is the only basis existing when the officials are elected or entered upon their duties. There is no escape from

the fact that they will and must be paid upon that basis for at least eight to ten months after entering upon their duties, or much longer, for, if the 1953 amendment in question is to be applicable at all, two factors are necessary to be found: (1) A change in the assessed value; (2) A finding by the court that the previous assessed value was unfair. If these factors should be found to exist and the 1953 amendment were to be applied, then the inescapable conclusion would follow that a change in the compensation would result. Such change means, under the holding in Board of Commissioners of Converse County v. Burns, supra, that the salary would not be definite and certain, the court saying on rehearing (3 Wyo. 715): "They must be paid 'fixed and definite' salaries by the terms of the constitution, and these words necessarily exclude the idea of a change in the salaries in the middle of an official year, or during an official term." In fact it it would seem to be quite clear that a basis for compensation which, by the very terms of the 1953 amendment, is not and cannot be known for at least many months after the officials enter upon their duties or perhaps for years (as in the case at bar), cannot possibly be said to be fixed and definite. Furthermore the application of that basis is contingent upon the finding of the court that the assessed valuation of a prior year was unfair, and such contingency in itself makes that basis for salary indefinite and uncertain. Again the change mentioned would mean either an increase or decrease in the salary during the term of office and according to our previous decisions would be in violation of Article 3, Section 32 of our constitution.

If the 1953 amendment were valid, there might result not only an increase but also a decrease in the salary by reason of the change of assessed value. It is not difficult to conjecture that a decrease might fol-

low. As a result, the officials would be compelled to refund part of the salary which they had already received and that might be a considerable sum, depending on the time when the two factors mentioned above would come into existence. The 1953 amendment does not say as to what parties have the right to bring the proceeding therein contemplated. It might be the board of county commissioners. What is worse, the officials would be at the mercy and caprice of any taxpayer in the county who might institute such proceeding and, apparently, at any time within the statute of limitations. We are not disposed to expose county officials to such unfair treatment. We answer the reserved constitutional questions submitted to us by "Yes".

If the legislature should give power to the court, or any other agency, to correct, revise and fix the assessed value of a particular year made by the board of commissioners so as to obviate any possible evil existing under present laws, a different question would be before us, at least if such correction and revision were made before the officials are elected or appointed. Without deciding the point, it may be that even under existing statutes, the State Board of Equalization, had its attention been called thereto, would have had the power to have caused the assessed valuation in Uinta county to be corrected before the election of 1950. If its present powers are not broad enough for such purpose, the matter may be easily remedied by amending the statutes, and thus injustice in assessed valuations may be reduced to a minimum.

*Reserved constitutional questions answered.*

RINER, J. AND HARNSBERGER, J., concur.